**WECHSLER SKIRNICK HARWOOD**
  **HALEBIAN & FEFFER**
**Stuart D. Wechsler  SW 4381**
**Andrew D. Friedman  AF 6222**
**555 Madison Avenue**
**New York, New York 10022**
**(212) 935-7400**
**Attorneys for Plaintiffs**
  Susan Cagan, Eric Cagan, David Dougherty and Jean Curzio

*FILED* (4)

*DEC 21 1990*
*At 8:30*
*WILLIAM T. WALSH*
*CLERK*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

IN RE DONALD J. TRUMP CASINO          MDL No. 864
SECURITIES LITIGATION .

THIS RELATES TO ALL ACTIONS          $1:90mc 919$

*RECEIVED*
*DEC 21 1990*
*WILLIAM T. WALSH*

AFFIDAVIT OF STUART D. WECHSLER IN OPPOSITION
GREENFIELD & CHIMICLES' MOTION TO APPOINT
AN INTERIM LEAD COUNSEL FOR PLAINTIFFS

says:          STUART D. WECHSLER, being duly sworn, deposes and

1.    I am a partner in the law firm of Wechsler

Skirnick Harwood Halebian & Feffer, ("Wechsler Skirnick"),

counsel for plaintiffs in the action entitled Cagan, et al.

v. Trump, et al., Civil Action No. 90-2842, (E.D.N.Y.)

("Cagan Action") -- one of four actions transferred to this

Court for coordinated pre-trial proceedings ("consolidated

actions")[1] -- and duly appointed lead counsel for plaintiffs

representing Bondholders of the Trump Taj Mahal Casino.  I

make this affidavit in opposition to the motion of

Greenfield & Chimicles, counsel for plaintiff in the "tag-

along" action entitled Fairmont Financial Corp. v. Trump, et

---

[1] A copy of the Order of the Judicial Panel on
Multidistrict Litigation, filed December 17, 1990, which
transferred the consolidated actions is attached hereto
as Exhibit A.  It is important to note that the action of
plaintiff Fairmont Financial Corp. was not transferred to
this Court by the MDL Panel and was described by the
Panel as a "tag-along" action that is "possibly related"
to the consolidated actions.



al., Civil Action no. 90-6202 (S.D.N.Y.), for an order appointing them as interim lead counsel for all plaintiffs ins the consolidated action.

2.    The appointment of an interim lead counsel is a wholly unnecessary step and is simply an attempt by Greenfield & Chimicles to override the traditional manner in which plaintiffs' counsel are organized -- i.e., by democratic election amongst counsel -- pursuant to which Wechsler Skirnick was elected as lead counsel for plaintiffs' representative Taj Mahal Bondholders.  Because various plaintiffs in the consolidated actions seek to represent parties with conflicting interests -- i.e., the Bondholders of the Trump Castle, the Trump Plaza, and the Trump Taj Mahal -- it is respectfully suggested that three lead counsel be chosen to represent the interests of each of the three distinct classes.   In fact, after serving the instant motion for appointment as sole lead counsel, Greenfield & Chimicles actually acknowledged this conflict of interests and suggested that it would be "inappropriate" for a single firm to serve as lead counsel in the consolidated action.   (A true copy of a letter dated December 17, 1990 from Mark Rifkin, Esq. of Greenfield & Chimicles to me is attached hereto as Exhibit B).

-2-



## Procedural History

### The Election of Wechsler Skirnick as
### Lead Counsel for Plaintiffs Representing
### Bondholders of the Trump Taj Mahal

3.    On October 19, 1990, a memorandum was sent via facsimile to representatives of the eight law firms representing plaintiffs seeking to represent a class of Taj Mahal Bondholders, inviting counsel to an organizational meeting to be held on October 23, 1990 at the offices of Wechsler Skirnick.    (A true copy of this memorandum is attached hereto as Exhibit C, and a true copy of the confirmation report indicating that the memorandum was sent via facsimile to Greenfield & Chimicles is attached as Exhibit D.)

4.    On October 23, 1990, a meeting was held and attended by five of the eight invited firms, and Wechsler Skirnick was elected as lead counsel for plaintiffs representing Trump Taj Mahal Bondholders.

### Greenfield & Chimicles' Improper
### Attempts to Have Themselves
### Appointed as Lead Counsel

5.    On December 6, 1990, without consulting plaintiffs' counsel, Greenfield & Chimicles served the instant motion seeking to have themselves appointed as interim lead counsel for all plaintiffs in the consolidated actions.

6.    Thereafter, by letter sent via facsimile on December 11, 1990, Mark Rifkin, Esq. of Greenfield & Chimicles invited all plaintiffs' counsel to an organizational meeting to be held at his office in

-3-

Haverford, Pennsylvania on December 17, 1990.

7. On December 14, 1990, I responded to Mr. Rifkin that his invitation to attend an organizational meeting was somewhat curious since an organizational meeting, to which his firm had been invited, had already been conducted and that my firm had been elected to serve as lead counsel for plaintiffs representing Taj Mahal Bondholders.

8. On December 17, 1990, Mr. Rifkin responded to my letter by claiming that Greenfield & Chimicles never received the invitation to the organizational meeting, although the memorandum clearly was faxed to his partner Richard Greenfield (See Exhibit D hereto). In any event, despite his firm having filed the instant motion seeking to be appointed sole interim lead counsel, Mr. Rifkin curiously suggested that because plaintiffs seek to represent conflicting interests, it would be "inappropriate" to appoint a single lead counsel in the consolidated actions. (See Exhibit B hereto). It is on this point that we apparently are in agreement. However, Mr. Rifkin's December 17th proposition is in direct contrast with Greenfield & Chimicles' representations to the Court in support of the instant motion.

-4-

## The Majority of Counsel For Plaintiffs Oppose
## the Appointment of Greenfield & Chimicles
## as Interim Lead Counsel

9.   It is clear that very few, if any, counsel for plaintiffs actually support Greenfield & Chimicles' attempt to be named lead counsel.  As the Court is aware, counsel for plaintiff in Kaufman v. Trump, et al., C.A. No. 90-2349 (D.N.J.)(JFG) has also opposed the instant motion. By letter to the Court dated December 11, 1990, counsel for plaintiff Kaufman details Greenfield & Chimicles' improper actions in support of its attempt to be appointed as lead counsel, including, inter alia, their having conducted "unilateral, unauthorized" discussions with defendants' counsel.   (A true copy of this letter to the Court is attached hereto as Exhibit E.)

## Qualifications of Wechsler Skirnick To
## Serve As Lead Counsel For the Class of
## Taj Mahal Bondholders

10.  It is submitted that Wechsler Skirnick Harwood Halebian & Feffer is well respected by the plaintiffs' securities bar and wholly qualified and experienced to serve as lead counsel representing the Class of Taj Mahal Bondholders or, in the alternative, all three classes of Bondholders.  (A copy of the Martindale Hubbel Legal Directory listing for Wechsler Skirnick is attached hereto as Exhibit "F").

11.  The expertise of Wechsler Skirnick in the field of securities holders' rights is well-known. Wechsler Skirnick has been involved in some of the most significant

securities and class action cases decided in the recent past. The firm has successfully prosecuted or is presently actively prosecuting numerous securities class actions as lead or co-counsel, liaison counsel, special counsel, member of executive and steering committees, or sole counsel for the class.

12.   In fact, this Court has recognized Wechsler Skirnick's skill in securities litigation.   On September 7, 1989, at a hearing held in In re Electro-Catheter Securities Litigation, a federal securities fraud action in which Wechsler Skirnick served as a co-lead counsel, Judge Nicholas Politan of the District of New Jersey stated:

> Counsel in this case are highly competent, very skilled in this very specialized area and were at all times during the course of the litigation that I participated in, which was perhaps the major part of the court litigation here, always well prepared, well spoken, and knew their stuff and they were a credit to their profession.   They are the top of the line.

13.   I will personally oversee Wechsler Skirnick's involvement in the instant litigation.   My efforts in the area of securities litigation have received considerable judicial comment.   In a report dated May 23, 1977, in Bucher v. Shumway, 76 Civ. 2420 (S.D.N.Y.), United States Magistrate Leonard Bernikow stated that "Stuart Wechsler... is a leading expert in securities class action litigation".

14.   In Langert v. Q-1 Corporation, [1973-74 If. Binder] Fed. Sec. L. Rep. (CCH) ¶ 94,445 (S.D.N.Y. 1974), a case that I prosecuted while at my prior firm, Goodkind Wechsler Labaton & Rudoff, Judge Carter of the Southern

District of New York stated in a decision certifying the class:

> Counsel for plaintiff are experienced in securities law and class action litigation and will adequately protect the interest of the class.

15.  Moreover, in <u>Rosengarten v.Internatioal Telephone and Telegraph Corp.</u>, [1981 If. Binder] Fed. Sec. L. Rep. (CCH) ¶ 97,876 (S.D.N.Y. 1981), an action in which my former firm's participation on behalf of the plaintiff class, Judge Lasker stated:

> [C]ounsel [are] attorneys of experience and repute in the field of stockholder and derivative actions... they served the corporation and its stockholders with professional competence, 'admirable diligence', imagination and tenacity. They contributed to the improvement of the company's procedures and performed a service to both the company and to the stockholders.

16.  In addition, I personally led the team of attorneys that successfully prosecuted the class action <u>Park Lane Hosiery Co., Inc. v. shore</u>, 439 U.S. 322 (1979), to a landmark decision in federal civil procedure. I was also the responsible partner in <u>Van Gemert v. Boeing</u>, one of the earliest actions maintained as a class action under the then newly amended Federal Rules of Civil Procedure, and one of the few securities class actions ever to go to trial and judgment. Moreover, I played an integral role in obtaining a landmark Supreme Court decision in an important phase of that action. <u>See Boeing Co. v. Van Gemert</u>, 444 U.S. 472 (1980).

## Conclusion

17. For the foregoing reasons, Greenfield & Chimicles' motion for an Order appointing them as interim lead counsel should be denied in its entirety. If the Court is inclined , at this time, to rule on the organization of plaintiffs' counsel, it is respectfully suggested that the actions be segregated into three groups -- representing Bondholders for each of the three casinos, the Trump Taj Mahal, the Trump Plaza, and the Trump Castle, that three separate firms be appointed as lead counsel for each group, and that the firm of Wechsler Skirnick Harwood Halebian & Feffer be appointed lead counsel for the Bondholders of Trump Taj Mahal -- as they were duly elected by counsel. In the alternative, as the sole lead counsel is deemed preferable, that Wechsler Skirnick Harwood Halebian & Feffer be appointed lead counsel for plaintiffs.

                                                Stuart D. Wechsler

Sworn to before me this
20th day of December, 1990.

TARAS A. SAWCHUK
Notary Public, State of New York
No. 30-4692087
Qualified in Nassau County
Term Expires May 31, 19..91

-8-