IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

IN RE DONALD J. TRUMP CASINO
SECURITIES LITIGATION

MDL DOCKET NO. 864
ALL CASES

CASE MANAGEMENT ORDER NO. 2

AND NOW, TO WIT, this 14th day of February 1991,
it is hereby ORDERED and DECREED by agreement for the actions
referred to in the caption hereto and for any related action which
hereafter may be filed in or transferred to this Court that:

I.

ORDER OF COORDINATION

ORIGINAL FILED

FEB 1 4 1991

WILLIAM T. WALSH, CLERK

The actions transferred to this Court by Order of the
Judicial Panel on Multidistrict Litigation filed December 4, 1990[1]
are hereby coordinated for purposes of discovery and pretrial

---

[1]   The four cases transferred to this Court are entitled
Sydney L. Kaufman v. Trump's Castle Funding, Inc., et al., Civil
Action No. 90-2349 (JFG); Jerome Schwartz v. Trump's Castle
Funding, Inc., et al., Civil Action No. 90-2350 (JFG); Peter
Stuyvesant, Ltd. v. Donald J. Trump, et al., (Civil Action No. 90-
3826 (JBS) (S.D.N.Y.)); Susan Cagan, et al. v. Donald J. Trump, et
al., (Civil Action No. 90-2842 (CJP) (E.D.N.Y.)).  On December 14,
1990, the Judicial Panel on Multidistrict Litigation entered
conditional transfer Orders in Fairmont Financial Corp., et al. v.
Donald J. Trump, et al. (Civil Action No. 90-6202 (LBS)
(S.D.N.Y.)); Fred Glosser, et al. v. Donald J. Trump, et al.,
(Civil Action No. 90-6534 (LBS) (S.D.N.Y.)); Robert Kloss v. Donald
J. Trump, et al., (Civil Action No. 90-3516 (E.D.N.Y.)), which
actions if not opposed by January 2, 1991 would also be transferred
to this Court.  Plaintiffs' counsel believe that the transfer was
not opposed by any party.

motions before the Honorable John F. Gerry pursuant to Rule 42(a) of the Federal Rules of Civil Procedure and according to the provisions set forth herein. This Case Management Order No. 2 (the "Order") shall apply to the described actions[2] and to each case that relates to the same subject matter as the described actions that is subsequently filed in this Court or transferred to this Court. All actions shall be described herein as the "Coordinated Actions."

## II.

### MASTER DOCKET AND FILE AND
### SEPARATE ACTION DOCKETS AND FILES

A.   A Master Docket and File are hereby established for the Coordinated Actions.   Entries in the Master Docket shall be applicable to the Coordinated Actions in accordance with the terms and provisions set forth in this Court's Case Management Order No. 1 filed December 17, 1990, and the provisions set forth herein.

B.   The original of this Order shall be filed by the Clerk in the Master File herein established.   The Clerk also shall maintain a separate file for each of the individual actions and filings shall be made therein only as set forth in this Order. The Clerk of the Court shall file a copy of this Order in each such separate file.   The Clerk also shall mail a copy of this Order to counsel of record in each of these cases.

---

2      Id.

2

III.

SUBSEQUENTLY FILED OR TRANSFERRED ACTIONS

A.   When a case that relates to the same subject matter as
the described actions is hereafter filed in this Court or
transferred to it from another Court, the Court will enter an order
making the newly filed or transferred action subject to this Order
and shall mail a copy of such order to Plaintiffs' Coordinating
Counsel, as defined below.  Plaintiffs' Coordinating Counsel shall:

(1)   mail a copy of such Order to counsel of record in
each of the Coordinated Actions and to counsel for plaintiff(s) and
counsel for defendant(s) in such newly filed or transferred
actions; and

(2)   mail a copy of this Order to counsel for
plaintiff(s) and counsel for defendant(s) in each such newly filed
or transferred action.

Further, the Clerk of the Court shall file a copy of this
Order in the separate file for such action and make an appropriate
entry in the Master Docket.

B.   The Court requests the assistance of counsel in calling
to the attention of the Clerk of the Court the filing or transfer

3

of any case that should be added to the Coordinated Actions under
this Order.

     C.   Within 20 days of the mailing of an Order adding an
action to the Coordinated Actions, any party may file an objection
to the order or seek relief from some or all of the provisions of
this Order.

### IV.

### CAPTION OF CASES

     A.   Every document filed in the Coordinated Actions shall
bear the identification "MDL Docket No. 864."

     B.   When a document is intended to be applicable to all
actions to which the Order is applicable, the words "All Cases"
shall appear immediately after the words, "This Document Relates
To:" in the caption set out above. When a document is intended to
applicable to only some, but not all, of such actions, the docket
number for each individual action to which the document is intended
to apply the name of the plaintiff in said action shall appear
immediately after the words, "This Document Relates To:" in the
caption described above (e.g., "Civil Action No. _____, "All Taj
Mahal Cases"[3] or "All Trump Castle and Trump Plaza Cases"[4]).   If

_____
     [3]    Of the seven described actions, six concern bonds issued
in connection with the development of the Taj Mahal Casino ("Taj
Mahal Cases"). The only action not included in the Taj Mahal cases

4

such document relates to five or fewer actions; the abbreviated caption of each of the actions may be listed opposite its number.

## V.

### FILING AND DOCKETING

A.    When a document is filed and the caption, pursuant to Section IV above, shows that it is to be applicable to "All Actions," the Clerk shall file such document in the Master File and note such filing in the Master Docket.  No further documents need be titled or docket entries made.

B.    When a document is filed and the caption, pursuant to Section IV above, shows it is to be applicable to fewer than all of the Consolidated Actions, the Clerk shall file a copy of such document in the Master File and a copy in the file of each specific action to which the document is intended to be applicable, and shall note such filing in the Master Docket and in the docket of each such action.    It shall be the responsibility of the party

---

i <u>Peter Stuyvesant, Ltd. v. Donald J. Trump, et al.</u>, Civil Action No. 90-3826 (JBS) (S.D.N.Y.).

[4]    Of the seven described actions, three concern bonds issued in connection with the development of the Trump Castle Casino ("Trump Castle Cases").  Those three actions are <u>Sydney L. Kaufman v. Trump's Castle Funding, Inc., et al.</u>, Civil Action No. 90-2349 (JFG); <u>Jerome Schwartz v. Trump's Castle Funding, Inc., et al.</u>, Civil Action No. 90-2350 (JFG) and <u>Peter Stuyvesant, Ltd. v. Donald J. Trump, et al.</u>, Civil Action No. 90-3826 (JBS) (S.D.N.Y.). To date, only one case concerns bonds issued in connection with the development of Trump Plaza Casino ("Trump Plaza Cases").  That action is <u>Stuyvesant</u>, <u>Id</u>.

filing such document to supply the Clerk with sufficient
copies of any document to facilitate the Clerk's compliance with
the directives of this paragraph.

VI.

CONSOLIDATED AMENDED COMPLAINTS

A.    Plaintiffs' Coordinating Counsel, as defined
below, shall file two consolidated amended complaints
("Complaints"), the first in the Taj Mahal Cases and the second
in the Trump Castle and Trump Plaza Cases, on or before
February 8, 1991.  Defendants shall answer, move or otherwise
plead to plaintiffs' Complaints not later than March 23, 1991.
Any motion to dismiss shall be made returnable May 3, 1991 before
Chief Judge Gerry.  Plaintiffs shall have until April 15, 1991
for their responses.  Defendants shall have until April 25, 1991
for any reply.

B.    The First Request for Production of Documents to
Defendants served by Plaintiffs in Susan Cagan, et al. v. Donald
J. Trump, et al. shall be deemed the Document Request in the Taj
Mahal Cases.  The Requests for Production of Documents to
Defendants served by plaintiffs in Peter Stuyvesant, Ltd. v.
Donald J. Trump, et al. shall be deemed the Document Request in
the Trump Castle and Trump Plaza Cases.  Defendants shall
commence producing non-privileged, relevant documents on or

6

before March 1, 1991, at a time and place to be mutually agreed upon by counsel, subject to a further schedule to be agreed to between counsel.

        C.    The pending motion for class certification ("Class Motion") filed and served in <u>Fairmont Financial Corp. v. Donald J. Trump, et al.</u>, shall be deemed the Class Motion in the Taj Mahal Cases.  The pending Class Motion filed and served in <u>Peter Stuyvesant, Ltd. v. Donald J. Trump, et al.</u>, shall be deemed the Class Motion in the Trump Castle and Trump Plaza Cases. Defendants shall file and serve responses to the Class Motions within thirty days after filing an answer to the Consolidated Amended Complaints or after the Court enters an Order denying defendants' motions to dismiss, whichever is earlier. Plaintiffs' replies shall be filed and served on or before ten days thereafter.

## VII.

### ORGANIZATION OF PLAINTIFFS' COUNSEL

        A.    The organizational structure of plaintiffs' counsel established by this Order shall be applicable to the Coordinated Actions.

        B.    The law firms of Wechsler Skirnick Harwood Halebian & Feffer, Greenfield, & Chimicles and Goodkind, Labaton

& Rudoff shall serve as Plaintiffs' Coordinating Counsel in the Coordinated Actions.  Plaintiffs' Coordinating Counsel shall be responsible for the receipt and dissemination of documents as described herein, may call meetings of plaintiffs' counsel when appropriate, shall be responsible for overall coordination of the conduct of the Coordinated Actions, including the coordination of written discovery, and the scheduling of depositions, in order to avoid any duplicative effort, and shall act as liaison with defendants' counsel.  Additionally, the Taj Mahal Cases shall have an executive committee consisting of the law firms of Berger & Montague, Zwerling, Schachter and Zwerling, Barrack, Rodos & Bacine, Wechsler Skirnick Harwood Halebian & Feffer, and Greenfield & Chimicles.  The lead counsel for the Taj Mahal Cases shall be the last two named firms.  In the Trump Castle and Trump Plaza Cases, Goodkind, Labaton & Rudoff shall be lead counsel. The lead counsel in the Taj Mahal Cases or Trump Castle and Trump Plaza cases shall have the following responsibilities in connection with the respective cases.

(1)  to initiate, brief and argue motions and prepare, serve and file opposing briefs in proceedings initiated by other parties;

(2)  to act as spokespersons at pretrial conferences;

(3)  to negotiate with defense counsel with respect to settlements and other matters;

(4)   to conduct all pre-trial, trial, and post-trial proceedings;

(5)   to consult with and employ experts; and

(6)   to perform such other duties and undertake such other responsibilities as they deem necessary or desirable in connection with the prosecution of the Taj Mahal Cases or Trump Castle and Trump Plaza Cases.

C.   Carl Poplar, Esquire shall act as liaison for the Court in communicating with plaintiffs' Coordinating Counsel.

D.   No motion, request for discovery or pretrial proceeding shall be initiated or responded to on behalf of any plaintiff except by Plaintiffs' Coordinating Counsel, subject to the right of any plaintiff having distinct interests to seek modification of the Order in accordance with Paragraph XI.

E.   Plaintiffs' Coordinating Counsel shall undertake reasonable efforts to utilize the various law firms representing plaintiffs in the Coordinated Actions and to allocate fairly and as reasonably as may be practicable the various assignments, but with a view in the first instance of facilitating the orderly and efficient prosecution of the litigation and the avoidance of duplicative or unproductive effort.

## VIII.

### COORDINATION OF PLEADINGS AND OTHER DOCUMENTS

A.   Service by Defendants on Plaintiffs may be made by hand delivery, telecopier, or overnight mail to Plaintiffs' Coordinating Counsel.

B.   A consolidated list of all counsel for plaintiffs shall be prepared and maintained by Plaintiffs' Coordinating Counsel, copies of which shall be furnished to the Court and to all counsel of record in the Coordinated Actions.  All parties are directed to promptly notify both the Court and all counsel of record of any changes in or additions to the consolidated list. Plaintiffs' Coordinating Counsel shall promptly notify the Clerk and all counsel of record of any such change.

C.   When a single pleading, motion or other document directed to all plaintiffs is filed by defendants, the response likewise shall be made in a single pleading, response, or other document filed on behalf of all plaintiffs by Plaintiffs' Coordinating Counsel, and all plaintiffs shall be bound thereby.

10

IX.

### EXCHANGE OF INFORMATION AMONG COUNSEL

A.   Counsel for plaintiffs and counsel for defendants
are authorized and directed to cooperate with one another,
whenever and to the greatest extent possible, to promote the
expeditious handling of these pretrial proceedings, including the
exchange or disclosure of information or documents between or
among counsel for plaintiffs and counsel for defendants in
connection with these Coordinated Actions.  Conduct pursuant to
this direction shall not, without more, be construed as a waiver
of any attorney-client, work product, or other privilege.


B.   Counsel for plaintiffs and counsel for defendants,
respectively, are directed to coordinate their efforts and to
file joint pleadings on behalf of all plaintiffs and on behalf of
all defendants, respectively, to the extent such coordination is
possible.


X.

### PRESERVATION OF DOCUMENTS

During the pendency of this litigation, each party
shall preserve all documents and other records containing
information which is relevant or will lead to the discovery of


11

admissible evidence with respect to the subject matter of the litigation.

## XI.

### MODIFICATIONS OF THIS ORDER

Any party to the Consolidated Actions may move at any time for modification of any portion of this Order for good cause shown.

## XII.

### NEXT CONFERENCE

The next Case Management Conference in this case will be convened before United States Magistrate Jerome B. Simandle on Wednesday, March 20, 1991 at 1:00 P.M. Subjects to be addressed include scheduling of depositions, overall discovery program, maintenance of plaintiffs' counsel's records for attorneys' time and expense consistent with Manual for Complex Litigation, Second §24.21 (1985), and status of related cases.

February 14, 1991
Dated

Jerome B. Simandle
JEROME B. SIMANDLE
UNITED STATES MAGISTRATE JUDGE

12

In The United States District Court
For the District of New Jersey

| | | |
|---|---|---|
| IN RE: TRUMP SECURITIES MDL | : | USDC NJ #1:90mc919 (JFG) |
| IN RE DONALD J. TRUMP CASINO SECURITIES LITIGATION | : | MDL DOCKET NO. 864 |
| KAUFMAN V. TRUMP | : | USDC NJ 1:90cv2349 (JFG) |
| SCHWARTZ V. TRUMP | : | USDC NJ 1:90cv2350 (JFG) |
| STUYVESANT V. TRUMP | : | USDC SDNY 90-3826 (JBS)<br>USDC NJ 1:90cv5004 (JFG) |
| CAGAN V. TRUMP | : | USDC NJ 1:90cv5051 (JFG)<br>USDC EDNY 90-2842 (CJP) |
| CHARNIS V. TRUMP | : | USDC NJ 1:90cv5052 (JFG) |
| KLOSS V. TRUMP | : | USDC NJ 1:91cv19 (JFG)<br>USDC EDNY 90cv3516 |
| FAIRMONT FINANCIAL V. TRUMP | : | USDC NJ 1:91cv18 (JFG)<br>USDC SDNY 90-6202 |
| GLOSSNER V. TRUMP | : | USDC NJ 1:91cv20 (JFG)<br>USDC SDNY 90-6534 |

SERVICE LIST AS OF 2/19/91

For Fairmont Financial:
RICHARD D. GREENFIELD, ESQ.
MARK RIFKIN, ESQ.
GREENFIELD & CHIMICLES
ONE PENN PLAZA, STE 2100
NYC, NY  10114

For KLOSS:
Bruce E. Gerstein, Esq.
Scott W. Fisher, Esq.
Bertram Bronzaft, Esq.
1501 Broadway
NYC, NY  10036

Pro Se:
C. "Bucky" Willard
c/o TRUMP TAJ MAHAL FUNDING, INC.
THE BOARDWALK & PENNSYLVANIA AVE.
AC, NJ  08401

Pro Se:
Lori Taylor
MISSISSIPPI AVE & THE BOARDWALK
AC, NJ  08401

For TRUMP, et al.:
Richard Posen, Esq.
Stephen Silverman, Esq.
WILKIE, FARR & GALLAGHER
153 E 53RD ST
NYC, NY  10022

For TRUMP'S CASTLE FUNDING, et al.:
JOHN J. BARRY, ESQ.
JOHN LEWIS LASKEY, ESQ.
CLAPP & EISENBERG
80 PARK PLAZA
NEWARK, NJ  07002

(Continued on opposite side)

MDL 864 SERVICE LIST, PAGE TWO

For CHARNIS:
JARED BENNETT STAMELL, ESQ.
STAMELL, TABACCO & SCHAGER
ONE INGHAM AVE
BAYONNE, NJ    07002

For CAGAN:
ROBERT J. RYAN, ESQ.
STUART D. WECHSLER, ESQ.
555 MADISON AVE
NYC, NY    10022

For SCHWARTZ:
GENE MESH, ESQ.
ROBERT B. MATUSOFF, ESQ.
GENE MESH & ASSOCIATES
3133 BURNET AVE
CINCINNATI, OH   45229

For STUYVESANT, LTD:
EDWARD LABATON, ESQ.
JONATHAN PLASSE, ESQ.
GOODKIND, LABATON & RUDOFF
122 E 42ND ST
NYC, NY   10168

For KAUFMAN:
HOWARD A. SPECTER, ESQ.
SPECTER LAW OFFICES, PC
2230 GRANT BUILDING
PITTSBURGH, PA    15219

For KAUFMAN & SCHWARTZ:
MICHAEL A. COHAN, ESQ.
21 ERNSTON RD
P.O. BOX 2000
PARLIN, NJ    08859

For GLOSSNER & KRANGEL
M. RICHARD KOMINS, ESQ.
ROBERT A. HOFFMAN, ESQ.
GERALD J. RODOS, ESQ.
BARRACK, RODOS & BACINE
STE 2100, 1845 WALNUT STREET
PHILA, PA    19103

For GLOSSNER & KRANGEL:
CHARLES R. VANDEWALLE, ESQ.
MARTIN, VANDEWALLE, GUARINO
  & DONOHUE
17 BARSTOW ROAD
GREAT NECK, NY    11021

For MERRIL LYNCH:
STUART BASKIN, ESQ.
DAVID BRADFORD, ESQ.
SHEARMAN & STERLING
CITICORP CENTER
153 E 53RD ST
NYC, NY    10022

PLTF'S COORDINATING COUNSEL:
WECHSLER, SKIRNICK, HARWOOD,
 HALEBIAN, & FEFFER
555 MADISON AVE
NYC, NY 10022
Phone (212) 935-7400
Fax (212) 753-3630
AND
GREENFIELD & CHIMICLES
ONE HAVERFORD CENTRE
361 W LANCASTER AVE
P.O. BOX 100
HAVERFORD, PA   19041-0100
Phone (215) 642-8500
Fax (215) 649-3633
AND
GOODKIND, LABATON, & RUDOFF
122 E 42ND ST
NYC, NY 10168
Phone (212) 490-2332
Fax (212) 818-0477

COURT LIAISON FOR COMMUNICATING
  WITH PLAINTIFF'S COORDINATING
  COUNSEL:

CARL POPLAR, ESQ.
1010 KINGS HWY S
CHERRY HILL, NJ   08034
(609) 795-5560

CLERK OF THE PANEL
JUDICIAL PANEL ON MULTIDISTRICT
  LITIGATION
1120 VERMONT AVE, NW    STE 1002
WASHINGTON, DC    20005

## MEMORANDUM OF UNDERSTANDING

The parties to the actions (the "Actions") now consolidated in the United States District Court for the District of New Jersey (the "Court") under the caption In re Donald J. Trump Casino Securities Litigation -- Taj Mahal Actions (MDL-864), by their undersigned attorneys, have reached an agreement in principle providing for the settlement of the Actions (the "Settlement") on the terms and subject to the conditions set forth below.

1.  The settlement terms, as described below, are the result of the commencement and prosecution of the Actions and negotiations among counsel for the parties to the Actions, who have agreed in principle that, in settlement of the Actions:

(A)  Trump Taj Mahal, Inc. ("TTMI"), or at the option of Donald J. Trump, a transferree of a portion of TTMI's interest in Trump Taj Mahal Associates (the "Partnership"), will issue to the classes of persons on behalf of whom plaintiffs have brought the Actions (the "Settlement Class", as defined in paragraph 4(a) below) putable warrants convertible into common stock of the issuer reflecting 1.76% of the equity of the Partnership on a fully diluted basis assuming exercise of the warrants to be issued to Merrill Lynch, Pierce, Fenner &

Smith, Inc. ("Merrill Lynch") in accordance with paragraph 3
below, subject to the terms and conditions more fully described
in Exhibit A hereto.

(B)  The terms of the proposed plan of
reorganization of Trump Taj Mahal Funding, Inc., Trump Taj
Mahal Associates and certain related entities (the
"Solicitors") pursuant to chapter 11 of Title 11 of the United
States Code, 11 U.S.C. §§ 101 et. seq. (the "Reorganization"),
as currently reflected in Pre-Effective Amendment No. 2 to Form
S-4 Registration Statement (the "Registration Statement") filed
by the Solicitors on or about March 1, 1991, will be amended
and improved as follows:  (i) early redemption of the New Bonds
will occur if additional Excess Cash Flow is available; (ii)
the redemption value of Class B shares of Taj Mahal Holding
Corp. will be increased from $.01 to $.50; (iii) the total
interest payable on the Bonds will be increased 10 basis
points; (iv) the minimum cash rate of interest on all New
Bonds, including payment-in-kind bonds ("PIKs"), will be fixed
at 9 3/8% per annum; (v) a cash sweep payment will be paid to
bondholders immediately prior to the commencement of the
bankruptcy case; this amount is currently anticipated to be
approximately $3-3.5 million, however, because this payment is
to be made out of excess cash available after other obligations
have been satisfied, there can be no assurance as to the amount
of any cash sweep payment (vi) interest on the New Bonds will accrue

- 2 -

from April 1, 1991; and (vii) the entire 14% Payment will be paid pro rata to holders of New Bonds on the final payment date if the persons otherwise entitled thereto cannot be located. All capitalized terms in this paragraph have the meaning given them in the Registration Statement.

(C) Defendants will create a settlement fund in the amount of $3.5 million in cash. $1.5 million of that amount will be paid by and on behalf of defendants Donald J. Trump, Robert S. Trump, Harvey Freeman, The Trump Organization, Inc., Trump Taj Mahal Funding, Inc., Trump Taj Mahal, Inc. and Trump Taj Mahal Associates Limited Partnership (collectively the "Trump Defendants"); $2 million of that amount will be paid by and on behalf of defendant Merrill Lynch. These amounts will be deposited in an interest-bearing escrow account to be maintained by plaintiffs' lead counsel at a financial institution mutually agreeable to the parties to the Actions no later than June 15, 1991.

2. The parties hereto agree that the terms of the Reorganization, amended as set forth in paragraph 1 above, have been improved as a result of negotiations among counsel for the parties over the terms originally proposed by the Solicitors, and that the Reorganization and the Settlement contemplated by this Memorandum of Understanding are fair to and in the best interests of the members of the Settlement Class.

3. As part of the settlement of the Actions, Merrill Lynch agrees to withdraw and release all claims that it has or

- 3 -

may have against any of the Trump Defendants or their
affiliates for indemnification arising out of (a) the letter
dated June 17, 1988 from Merrill Lynch to Donald J. Trump, or
(b) the purchase agreement between Merrill Lynch, and Trump Taj
Mahal Funding, Inc. and Trump Taj Mahal Associates Limited
Partnership dated November 9, 1988.  In exchange for this
release, the Trump Defendants will issue to Merrill Lynch
50,000 warrants of the type described in Exhibit A hereto,
except that the warrants issued to Merrill Lynch will not
contain any put feature.

          4.   The parties to the Actions will execute an
appropriate Stipulation of Settlement and such other
documentation as may be required in order to obtain approval by
the Court, or any other court approval (including bankruptcy
court approval) that may be considered appropriate or
necessary, of the Settlement of the Actions upon the terms set
forth in this Memorandum of Understanding.  Pending the
negotiation and execution of said Stipulation of Settlement,
all proceedings in the Actions will be suspended except as
provided in paragraph 6 below.  The Stipulation of Settlement
will describe plaintiffs' claims and the procedural history of
the Actions and will expressly provide, among other things, (a)
for the certification of a class, for settlement purposes only,
consisting of all record and beneficial holders of 14% First
Mortgage Bonds, Series A, due 1998, issued by Trump Taj Mahal

- 4 -

Funding, Inc. ("Taj Bonds") on or after November 22, 1988,
including all those who purchased Taj Bonds on or after
November 22, 1988 and currently hold them as well as all those
who purchased Taj Bonds on or after November 22, 1988 and sold
them at a loss, as well as the legal representatives, heirs,
predecessors and successors in interest, or assigns of all such
foregoing holders (the "Settlement Class"); (b) for the
dismissal with prejudice of the Actions; (c) for a release by
all members of the Settlement Class of all defendants in the
Actions and their officers, directors and affiliates from all
claims that are or could have been asserted in the Actions; (d)
that defendants in the Actions have denied, and continue to
deny, that they have committed or have threatened to commit any
violations of law or breaches of duty; (e) that defendants in
the Actions are entering into this Memorandum of Understanding,
and will be entering into the Stipulation of Settlement, solely
because the proposed Settlement would eliminate the burden and
expense of further litigation and would facilitate the
Reorganization, which is in the best interest of the parties
and all creditors of the Solicitors; and (f) that all members
of the Settlement Class relinquish any entitlement to, and
shall be enjoined and barred from commencing, any action or
asserting any objection with respect to the Reorganization or
any claim that is or could have been asserted in the Actions.

5.    The parties to the Actions will present the
Settlement to the Court for hearing and approval as soon as
practicable following appropriate notice to the members of the
Settlement Class and will use their best efforts to obtain
final Court approval of the Settlement and the dismissal of the
Actions with prejudice as to all claims asserted in the Actions
as against the named plaintiffs and the Settlement Class
without cost to any party (except as provided for in paragraph
7 below).

6.    The consummation of the Settlement is subject to
(a) the completion by plaintiffs of any additional discovery,
as mutually agreed to by the parties to the Actions, sufficient
to enable plaintiffs' counsel to confirm that the Settlement is
fair and reasonable and in the best interests of the members of
the Settlement Class, provided that defendants shall not
unreasonably withhold their consent to such additional
discovery; (b) the drafting and execution of an appropriate
Stipulation of Settlement and such other documentation as may
be required to obtain final Court approval of the Settlement;
(c) dismissal of the Actions with prejudice and without costs
to any party (except as provided for in paragraph 7 below); and
(d) final confirmation of a plan of reorganization containing,
among other things, appropriate releases of and injunctive
protection for the defendants.

- 6 -

      7.  The parties have had no discussions concerning the award of attorneys' fees or reimbursement of expenses to plaintiffs' counsel, except that the parties have agreed that those fees will be awarded based upon motion to the Court, and that any fees awarded will be paid only out of the settlement consideration described in paragraph 1 above.  Defendants shall be responsible for all costs of providing notice of this Settlement to the members of the Settlement Class and those relating to the processing of claims hereunder.

Dated:  New York, New York
        April 23, 1991

           WILLKIE FARR & GALLAGHER

           By _____

           One Citicorp Center
           153 East 53rd Street
           New York, New York  10022-4669
           (212) 935-8000
           Attorneys for The Trump Defendants


           CLAPP & EISENBERG

           By _____

           80 Park Plaza
           Newark, New Jersey  07102
           (201) 642-3900
           Attorneys for The Trump Defendants

SHEARMAN & STERLING

By _____

One Citicorp Center
153 East 53rd Street
New York, New York  10022-4669
Attorneys for Defendant Merrill
  Lynch, Pierce, Fenner & Smith, Inc.

GREENFIELD & CHIMICLES

By _____

One Haverford Centre
Haverford, PA  19041
(215) 642-8500

WECHSLER SKIRNICK HARWOOD
  HALEBIAN & FEFFER

By _____

555 Madison Avenue
New York, New York  10022
(212) 935-7400

Lead Counsel for Plaintiffs
and the Classes

CARL D. POPLAR, ESQUIRE
1010 Kings Highway S.
Cherry Hill, NJ  08034
(609) 795-5800

Liaison Counsel

- 8 -

BARRACK, RODOS & BACINE
Gerald Jay Rodos
Suite 2100
1845 Walnut Street
Philadelphia, PA 19103

BERGER & MONTAGUE
Stanley R. Wolfe
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000

ZWERLING, SCHACHTER & ZWERLING
Robert S. Schacter
800 Third Avenue
New York, NY 10017
(212) 223-3900

Executive  Committee of
  Plaintiffs' Counsel

## EXHIBIT A

### TRUMP TAJ MAHAL, INC.

#### Summary of Terms and Conditions

##### Putable Warrants

Issuer:                    Trump Taj Mahal, Inc. ("TTMI") or, at
                           the option of Donald J. Trump, a
                           transferee of a portion of TTMI's
                           interest in the Partnership

Expiration Date:           June 15, 2001

Issue:                     2.5 million warrants for Common Stock of
                           the Issuer or equivalent thereof (the
                           "Common Stock") reflecting 1.76% of the
                           equity of the Partnership

Exercise Period:           Any time after December 15, 2000

Exercise Price:            $.01 per share of Common Stock

Adjustments to Exchange
   Ratio:                  The exchange ratio is subject to
                           adjustment as set forth in the Warrant
                           Agreement including:  the issuance of
                           stock of the Issuer as a divided or
                           distribution on the Common Stock;
                           subdivisions, combinations and
                           reclassifications of the Common Stock,
                           the issuance to all holders of Common
                           Stock of certain rights or warrants
                           entitling them to subscribe for Common
                           Stock; and the issuance, in certain
                           circumstances, of securities convertible
                           into or exchangeable for shares of
                           Common Stock.  No adjustment in the
                           exchange ratio will be required unless
                           such adjustment would require a change
                           of at least 1% in the ratio then in
                           effect, but any adjustment that would
                           otherwise be required to be made shall
                           be carried forward and taken into
                           account in any subsequent adjustment.
                           If the Issuer consolidates or merges
                           into or transfers or leases all or
                           substantially all of its assets to

another person, the Warrants will become convertible into the kind and amount of securities, cash or other assets which the holders of the Warrants would have owned immediately after the transaction if the holders had converted the Warrants immediately before the effective date of the transaction.

Put Features:

Put Period:              Any time after December 15, 2000 until the Expiration Date

Put Price:               $12,500,000 in the aggregate

Put Obligor:             TTMI

Conditions to Put:       Payment of Bonds in full or a refinancing of the Partnership or the sale of all or substantially all of the assets of the Partnership; cumulative Partnership net income of $145,000,000 for 1995-1999; holders of at least 60% of the warrants elect to exercise the put.