Page 1

#7.7

1          UNITED STATES DISTRICT COURT
          FOR THE DISTRICT OF NEW JERSEY

2

3    _____

IN RE:
4    DONALD J. TRUMP CASINO
     SECURITIES LITIGATION --
5    TAJ MAHAL LITIGATION
                              MDL 864 (JFG)
6    _____

7                     UNITED STATES COURTHOUSE
                     401 MARKET STREET
8                     CAMDEN, NEW JERSEY 08181
                     JANUARY 11, 1991

9

10   B E F O R E:      THE HONORABLE JOHN F. GERRY, CHIEF JUDGE
                       DISTRICT OF NEW JERSEY

11
                              AND
12
                     JEROME B. SIMANDLE
13             UNITED STATES MAGISTRATE JUDGE

14   A P P E A R A N C E S:

15
           (AS LISTED ON PAGES 2 AND 3)
16

17

18                                    FILED

19                                  JUL 1 5 1992

20                          AT 8:30

21                          WILLIAM T. WALSH    M.
                              CLERK

22

23

24

25                     THEODORE M. FORMAROLI, C.S.R.
                       OFFICIAL U. S. REPORTER

1          CHIEF JUDGE GERRY:  I admire your dedication and

2    resolve showing up today.  Had somebody not come in from

3    Pittsburgh, we might have called it all off, but we wouldn't

4    have you make a trip like that for naught.

5          MR. MATUSOFF:  And Ohio, your Honor.

6          CHIEF JUDGE GERRY:  And Ohio.  Don't forget Ohio.

7    Welcome, one and all.  Well, we're here, I gather, to try to

8    decide on the lead counsel problem and how that's to be set

9    up.  Maybe we ought to tackle that first and then go into some

10   very preliminary ideas of how we're going to organize this

11   matter and how we're going to handle it and what are the kind

12   of things that we ought to be thinking about providing for

13   now.

14        For billing purposes, would you like to enter your

15   appearances now?  Good afternoon, Carl.

16         MR. POPLAR:  Good afternoon, your Honor.  I'm from

17   Cherry Hill.  I was able to make it, no problem, Judge.

18         CHIEF JUDGE GERRY:  Being from Cherry Hill will

19   reduce the hourly allowance when the time comes, as opposed to

20   Pittsburgh and other more prestigious places.  Why don't you

21   seriously enter your appearance on the record here so that we

22   may have it?  We do have your sign up list here this

23   afternoon, but maybe that would help.  How about we start from

24   the left over here and go right around the loop.  We'll do

25   that.

1          MR. RIVKIN:  Good afternoon, Mark Rivkin on behalf of

2    plaintiff Fairmont Financial Corporation.

3          MR. GREENFIELD:  Richard Greenfield, your Honor,

4    Fairmont Financial Corporation.

5          MR. POPLAR:  Carl Poplar, I'm local counsel with Mr.

6    Stew Wechsler on behalf of plaintiffs Cagan and Doctor Curzio.

7          MR. WECHSLER:  Stuart Wechsler, Wechsler, Skirnick,

8    Harwood, Halebian & Feffer, on behalf of the Cagans and other

9    plaintiffs.

10         MR. LABATON:  Edward Labaton of New York, your Honor,

11   for the plaintiff in the Peter Stuyvesant, Ltd., case.

12         MR. MATUSOFF:  Robert B. Matusoff, Gene Mesh &

13   Associates for plaintiff Schwartz, case 90-CV-93-350, which

14   has been entered here.

15         MR. SPECTER:  Howard Specter, your Honors, of Specter

16   Law Offices in Pittsburgh for plaintiff Kaufman.  Michael

17   Cohen from Parlin asked me to communicate not only his

18   regrets, the but fact that he only made one exit on the

19   Turnpike driving down here.  He left after ten o'clock and the

20   four wheel drive didn't make it.

21         CHIEF JUDGE GERRY:  Right, okay.  Thank you.

22         MR. CUMMINS:  Richard Cummins, your Honor, on behalf

23   of plaintiffs Fred Glossner and Herman Krangel and Rob Hoffman

24   also on behalf Gloucester and Krangel.

25         MR. BARRY:  John J. Barry, Clapp and Eisenberg, for

1   Trump and related Trump entities.

2          MR. POSEN:  Richard Posen of Wilkie, Farr & Gallagher

3   for Donald Trump and the other Trump-related individual

4   defendants.

5          MR. BASKIN:  Good afternoon, your Honor.  Stuart

6   Baskin from Shearman and Sterling for Merrill Lynch.

7          CHIEF JUDGE GERRY:  Okay, is that everybody?  Mr.

8   Greenfield, maybe it might help to advance your own motion

9   here and suggest to the court the reasons why we ought to

10  adopt your organizational suggestion.

11         MR. GREENFIELD:  Do you want me to stand, your Honor,

12  or may I --

13         CHIEF JUDGE GERRY:  No, no, no, you can stay where

14  you are.

15         MR. GREENFIELD:  Every one of these cases has its own

16  dynamics.  This one has a composition of not 11 or 12

17  identical cases, but rather several groups of different claims

18  and different cases.  Initially, when we filed our motion, it

19  was recognizing the need for some sort of consolidation that

20  would make sense.  What the bulk of us, and by the bulk I mean

21  ten of the twelve law firms that are involved in these cases,

22  have determined is that there really should be two groups of

23  cases:  Those related to the Trump Taj Mahal and those

24  relating to the Trump Plaza and Trump Castle of the Trump

25  Plaza.

1          CHIEF JUDGE GERRY:   Their potential conflict dictates

2   that kind separation?

3          MR. GREENFIELD:   There are, your Honor, there are

4   some actual conflicts.   For example, in the Trump Plaza and

5   the Trump Castle, the principal allegations are that assets

6   and properties of those two hotel-casinos damaged the

7   bondholders of those entities in favor of the Trump Taj Mahal.

8          CHIEF JUDGE GERRY:   Um-hum.

9          MR. GREENFIELD:   In essence, in order for Mr. Trump

10  to build up the Taj Mahal, he, among others things, raided

11  client lists, entertainers, that sort of thing.   There is also

12  forthcoming, probably some four to six months down the road,

13  possible restructuring of the financial statements, the

14  balance sheets of those two entities, but that is in the

15  background for the present.   I think by the spring those

16  issues will heat up, but for the present they are not live in

17  front of us.

18      The Taj Mahal is a case that may have some internal

19  differences, but it arises out of two discrete issues, one of

20  which is the selling of the bonds to the investing public

21  starting with the offering through the subsequent period up

22  till last fall; and the second issue, which is about to befall

23  us, and that is the need for a financial restructuring as a

24  result of the deteriorated condition of the company.   That is

25  going to involve a bankruptcy filing, which we believe to be

1   imminent.  It is in part what has been described in the news

2   media as a prepackaged bankruptcy.  I don't know that any of

3   us are that sanguine that it's going to go all that smoothly,

4   but at least there are major blocks of creditors that have

5   gone along with a proposed plan of reorganization, as at least

6   it's been widely reported in the news media, and we've gotten

7   such indications from defense counsel as well.

8        The cases, it seems to I think all of us, ought to follow

9   two separate and distinct coordinated or consolidated

10  complaints:  One for the Castle and Plaza bonds and one for

11  the Taj Mahal bonds.  Based upon conversations we've had with

12  defense counsel, they have requested that we put off very

13  active proceedings or any proceedings for the present other

14  than getting the complaints consolidated in the Castle/Plaza

15  case because they're going to have a lot to do over a very

16  short period of time in the Taj Mahal cases.  This is

17  something that makes sense in terms of everybody's resources

18  and at least keeping things in terms of priorities.  There is

19  no immediate danger to the Plaza or the Castle in putting that

20  case on a back burner, so to speak.  And by a back burner, I'm

21  not talking about staying the case, but rather at least

22  putting it behind the Taj Mahal cases.

23        Most of the lawyers and plaintiffs have filed on the Taj

24  Mahal side, and in part that explains what appears to be a

25  more cumbersome organizational structure.  I think there is

1  some nine plaintiffs that have filed Taj Mahal cases.  We have

2  proposed a structure, your Honor, that would involve two

3  coordinating counsel.  Mr. Wechsler and myself would act as

4  coordinating counsel for all of the cases, including the Plaza

5  and the Castle.

6      CHIEF JUDGE GERRY:  What are the common

7  characteristics of Taj Mahal on one side and the Castle and

8  Plaza on the other that suggest an advantage in having

9  additionally coordinating counsel?

10     MR. GREENFIELD:  I think principally, your Honor, the

11 reason that coordination is important only relates to one

12 issue, and that's the financial condition of Donald Trump and

13 the Trump organization generally, and that may not -- it will

14 have an important element in terms of any restructurings that

15 have to take place.  There are the additional issues that I

16 mentioned previously, the tug of war, so to speak, between the

17 Plaza and the Castle on the one hand and the Taj Mahal on the

18 other.

19     But I think for the present, and Mr. Labaton or Mr.

20 Specter may disagree with me, those are not issues that we

21 have to put lot of energy into considering at this point.  I

22 think largely the issues that we're going to be grappling with

23 over the next several months, other than the broader liability

24 issue, is the financial condition of the Trump organization

25 and how it impacts on the various related casino companies.

1    Mr. Posen and I have worked out a basic understanding,

2  it's obviously subject to your Honor's approval, but it would

3  in essence require us to very promptly do a consolidated

4  complaint in the Taj Mahal case and deter at least for 60 days

5  any obligation to answer or move against it.  The reason for

6  such a long period would be, among other things, to allow the

7  financial events to go forward; number two, it would afford

8  the parties the opportunity to explore settlement of some or

9  all of the claims; and, number three, I guess we feel that if

10  settlement is possible, why should we be wasting time on

11  motion practice which inevitably comes in these cases whether,

12  from our perspective, whether it's warranted or not?  It's

13  just any time you file a complicated complaint, you get a

14  motion back.  We are not particularly concerned whether it's

15  60 days or 90 days.

16    I think, again, the transactions that are we're going to

17  have to deal with on an expedited basis are going to keep all

18  of us quite busy.  The structure again is such that we have

19  the kind of efficiency that we had in the recently concluded

20  Bally case where we had 22 sets of lawyers, everybody has a

21  role, or in some cases think they have a role.  There is a

22  very delicate balancing between doing what is, I hate to say

23  it, politically right and being fair to their clients, but at

24  the same time running a complex litigation in an efficient

25  manner.  And it's not an easy role to take to.  Whether you

1    are trying to lead the case or trying to be one of the troops,

2    you all have an obligation to your respective clients and one

3    of the things that the court ultimately has to do is try and

4    balance those various interests with what is the paramount

5    interests of the classes. And we have proposed a structure

6    that I think balances, as well as we can under the

7    circumstances, those various interests.

8        CHIEF JUDGE GERRY: Should an attorney who somewhere

9    along the line believes that the class that he represents

10   occupies a unique and distinct position that requires his

11   disassociation with the position assumed by the lead or

12   coordinating counsel, under those circumstances should there

13   not be some provision whereby if the court is so persuaded

14   that there is a distinction and singular position, that that

15   party should be permitted to opt out, perhaps, or not be bound

16   by a decision?

17       MR. GREENFIELD: The answer is absolutely yes, your

18   Honor. I think we face this in every class action, even one

19   not as complicated as this. There are people who will not

20   agree with the approach taken by lead counsel. I've been in

21   that position myself where I haven't agreed and for whatever

22   reason have gotten my own way.

23       CHIEF JUDGE GERRY: I wasn't addressing really the

24   hypothetical situation where some attorney may not agree with

25   what lead counsel has decided to do or proposes to do, but

1  rather where somewhere along the line as the case develops,

2  the objecting attorney objects not just simply because he

3  disagrees with the course but because he at that point

4  identifies what he believes to be a singularly distinct

5  interest that his clients have from the members of the class

6  or classes for which the coordinating or lead counsel is

7  speaking, that kind of situation.

8        MR. GREENFIELD:  The proper procedure would be, as I

9  guess provided by the pretrial order, for modification of that

10 order; to come before the court and say:  Judge, I think for

11 people who own now, for example, and didn't buy during the

12 class period but just recently bought as a speculation, those

13 people have a different interest, Mr. Greenfield or Mr.

14 Wechsler can't properly represent those interests because

15 their people have owned all along, I would like to be able to

16 represent this other group.  That would be perfectly

17 appropriate to the extent that there is a legitimate

18 divergence of interest.

19       CHIEF JUDGE GERRY:  Yes, yes.

20       MR. GREENFIELD:  The question ultimately comes down

21 to is there a legitimate divergence, and that's something for

22 your Honor to consider when and if the issue arises.

23       CHIEF JUDGE GERRY:  Yes, sure.  Mr. Wechsler.

24       MR. WECHSLER:  Your Honor, I think we tried to deal

25 as much as we could in advance with that issue that you very

1    legitimately raise by providing not only for coordinating

2    counsel but by limiting the role of coordinating counsel and

3    by providing separate representation.

4            CHIEF JUDGE GERRY:  And identifying that limitation

5    up front.

6            MR. WECHSLER:  So, for example, if you went along

7    with the organization as structured by the majority of

8    counsel, there is a separate counsel who would be lead counsel

9    for the Castle interests, and I would not presume to speak for

10   any substantive matters dealing with any settlement of those

11   claims or prosecution of those claims.  But the role of the

12   coordinating counsel is more limited than that.  And, for

13   example, if Donald Trump is to be examined, I would expect

14   that he would not be likely to want to be examined more than

15   once, if possible.  And even if some of the material on which

16   he would be examined would be separate, presumably the

17   coordinating counsel would make sure that the scheduling was

18   at one time, one place, and that the attorneys who would

19   conduct the examination would conduct it in order to cover all

20   of the material on all of the three casinos, some of which is

21   overlapping and a good deal of which is not overlapping.  But

22   even as to the non-overlapping material, there ought to be,

23   from the defendants' point of view, from the judicial point of

24   view, an arrangement which would make it easier on all

25   parties, and for the defendants in particular, it would be

1    appropriate to bring down Mr. Trump on more occasions than
2    necessary, and the same is true for all the other defendants.
3             CHIEF JUDGE GERRY:  Do you see any potential
4    conflicts or other reasons that would compel or dictate a
5    separation also between a lead counsel for Castle and lead
6    counsel for Plaza?  Someone suggested that you had originally
7    urged three separate lead counsel, but then after your more
8    recent adoption of the proposal that's being made here,
9    you -- which I gather does not make an additional separation
10   or distinction between Castle and Plaza.
11            MR. LABATON:  May I address that, your Honor?  I
12   think it's appropriate for me to address that, since we filed
13   the first action in all of these cases, and we filed that
14   action on behalf of Plaza and Castle bondholders.  And we
15   perceived no conflict of interest whatever between Plaza and
16   Castle; that essential claims are identical with respect to
17   them, they are against Trump for identical conduct.  And there
18   is a clear conflict with the Taj in that the basic original
19   complaint which was filed early in June, I believe, the basic
20   allegation later expanded in an amended complaint, but the
21   basic allegation is based upon reports in various -- in the
22   press and elsewhere, was that Donald Trump personnel were
23   directed by Trump to turn over proprietary information that
24   was owned by the Castle and the Plaza to the Taj so that they
25   could use that information.  And the principle proprietary

1  information identified was the list of heavy gamblers, of big

2  gamblers, which is a very important asset to a casino.  And we

3  also identified that revenues of both Castle and Plaza dropped

4  substantially more than other hotels in the period immediately

5  after the Taj opening, which we felt was --

6          CHIEF JUDGE GERRY:  Disproportionately.

7          MR. LABATON:  To other casinos.

8          CHIEF JUDGE GERRY:  To other casinos.

9          MR. LABATON:  To other casinos in the period

10  immediately after the Taj opening.  So we felt that there was

11  a direct tie-in between that loss of proprietary information

12  and the direct revenue impact as a result of that.  We believe

13  that there was no conflict.  If there was a conflict, we felt

14  that we would not have filed the complaint in that form.

15          THE COURT:  In the first place, yes.

16          MR. LABATON:  Yes, your Honor.

17          CHIEF JUDGE GERRY:  Mr. Specter, tell us what you

18  think about all this.

19          MR. SPECTER:  I think a great deal, your Honor, and

20  I'm hopeful that we can resolve the problems today in an

21  adversarial but nevertheless somewhat collegial way.  I hope

22  that all counsel can disagree without being disagreeable.  I

23  say this with the utmost respect to all counsel, anyone of

24  whom possesses the experience and the competence and

25  background to serve in a lead position in this litigation.

1    Addressing the very last question that your Honor posed
2    and that Mr. Wechsler did not answer, I see a distinct
3    conflict between the Castle and the Plaza situations.  Not
4    only do I see that conflict, but everyone else who submitted
5    anything to this court before arriving at a consensus of the
6    seven or eight also saw that problem.  For whatever reason,
7    their positions have changed.

8         My understanding of the allegations in Mr. Labaton's
9    complaint is, as he stated them, that the Trump entities,
10   Trump, siphoned off assets in the nature of player lists from
11   both Castle and Plaza.  Assuming that to be the case, Mr.
12   Labaton is almost certain to find himself in a position down
13   the road where the Castle bondholders are saying we're
14   entitled to the income generated by the Taj from the siphoning
15   and the Plaza bondholders are going to say no, that income
16   came from the Plaza.  There will undoubtedly be a dispute and
17   a real conflict between the Castle and the Plaza situations in
18   this litigation.  It is inevitable, your Honor.

19        Mr. Wechsler thought it was inevitable when he submitted
20   an affidavit to this court in opposition to Mr. Greenfield's
21   initial motion to be designated as interim lead counsel.  Mr.
22   Wechsler represented to this court under oath that the proper
23   way to handle and manage this case efficiently was to have
24   three lead counsel.

25            CHIEF JUDGE GERRY:  It was because of that that I had

1  directed the question to Mr. Wechsler.

2      MR. SPECTER:  And I assume that at some point he will

3  respond.  And I thought that was why you did.  He indicated in

4  his papers that there were three distinct classes and that

5  three different lead counsel would be required to handle these

6  case properly.

7      Mr. Greenfield also took the position in a letter over

8  Mr. Rivkin's signature to Mr. Wechsler that there were

9  conflicts and that a single lead counsel couldn't properly

10  serve in this case.

11      So, there are real conflicts.  But where we end up in

12  this proposed structure, your Honors, is that at the top of

13  the structure, the organizational chart, as it were, there are

14  two counsel who represent and speak only for the Taj

15  litigation.  And, you know, that may not come out at first

16  glance.  If I may.  (Handing) May I approach?

17      CHIEF JUDGE GERRY:  Sure.

18      MR. SPECTER:  It's one thing to type something up and

19  put at the end so-and-so will serve as lead counsel, but I had

20  someone prepare for me an organization chart that sets forth

21  the proposed structure.  And what we have at the top, and it

22  is the top by whatever name we call it, two counsel who

23  represent only Taj bondholders.  Mr. Greenfield has already

24  put Taj bondholders in a conflict with other bondholders by

25  telling this court that he has discussed with defense counsel

1    the desirability of kind of back-burnering the other case.  I

2    can appreciate that, why he feels that way, since he's only in

3    the Taj case, but Castle and Plaza people would have a

4    different view.

5        Then on the left and the right as Trump lead counsel, as

6    Castle lead counsel and Plaza lead counsel, we have Mr.

7    Labaton in the face of this very real conflict that I alluded

8    to.  And then down the middle a passel, I suppose might be the

9    right term, of other counsel who serve on some kind of

10   executive committee and in lead positions.

11       The Manual for Complex Litigation properly points out

12   that the decision and the selection of lead counsel is

13   potentially the most significant and sensitive in the

14   litigation.  And what we have here, although Mr. Greenfield

15   talks about the bulk of counsel agreeing and a majority

16   consensus, we have what in essence I think are about nine

17   cases, with counsel in seven of those cases who are counsel

18   who essentially represent Taj bondholders establishing a

19   structure for Taj, Castle and Plaza.

20       There are only three cases.  There is no Plaza

21   representative in a top level position, there is no Castle

22   representative in a top level position and essentially the Taj

23   Mahal counsel have structured this litigation.

24       Don't stand up, Richard.

25           MR. RIVKIN:  Why don't you stand up and respond?

1      MR. SPECTER:  Stand up, Richard.

2      CHIEF JUDGE GERRY:  Just hold on.

3      (Short pause).

4      CHIEF JUDGE GERRY:  Let me ask you a question before

5 we give you a chance to respond, and I'm sure you're anxious

6 to do so.  I have a little sheet here.  Where did this come

7 from, Jerry, do you know?

8      JUDGE SIMANDLE:  Attached to the submission of Mr.

9 Greenfield.

10     CHIEF JUDGE GERRY:  Bondholders' litigation

11 somewhere.

12     MR. SPECTER:  That's the Specter/Mesh part of it,

13 your Honor.

14     CHIEF JUDGE GERRY:  Okay.  Now, is it correct, Mr.

15 Specter, that you represent bondholders, the Castle 13 and 3/4

16 percent bondholders and then Castle 17 percent bondholders?

17     MR. SPECTER:  Yes, your Honor.

18     CHIEF JUDGE GERRY:  And the Taj 14 percent

19 bondholders?

20     MR. SPECTER:  Yes, your Honor.

21     CHIEF JUDGE GERRY:  Does that represent a conflict on

22 your part?

23     MR. SPECTER:  No, your Honor, for a couple of

24 reasons.

25     CHIEF JUDGE GERRY:  How does that work?

1          MR. SPECTER:  For a couple of reasons.  One,

2  procedurally in the context of our proposed structure,

3  organizational structure, and it is one that had been proposed

4  by everybody else until two days ago, there would be a lead

5  counsel for the Taj group, lead counsel for the Plaza group

6  and a lead counsel for the Castle group.

7          CHIEF JUDGE GERRY:  Only one case involving Plaza,

8  right?

9          MR. SPECTER:  Only one case involving Plaza.  And I

10  don't know whether there is a bondholder who has any Plaza

11  bonds, somewhere we've got to confront that question.

12          CHIEF JUDGE GERRY:  Excuse me, go ahead.

13          MR. SPECTER:  Assuming that if nothing else there is

14  some majority rule among all of the Taj cases, someone other

15  than my firm and probably someone other than Mr. Labaton's

16  firm will serve as lead counsel in the Taj Mahal class; it

17  wouldn't even be the potential for a conflict.

18      Even putting that aside, these bonds are issued by

19  different entities.  It's in many ways like someone who has

20  both common and preferred stock representing two groups of

21  stockholders, a class of common and a class of preferred,

22  something that we see all the time, or a common stockholder

23  representing both common and preferred holders.  I think that

24  is something that everyone here has done.

25      What we have now is one client, Sidney Kaufman, who

1  purchased Taj bonds, Castle bonds.  He has two claims; there
2  are two classes; he could have filed two different lawsuits,
3  instead we put both claims in one suit.  I don't see the
4  potential for a conflict.

5      If the court does, I think it can be obviated by the
6  designation of someone else as lead counsel in Taj, someone in
7  Castle, someone in Plaza and that situation is taken care of.

8      But what we have here under the proposed structure is a
9  situation where the vast majority of all counsel, those
10 counsel who voted represent Taj Mahal bondholders, and they
11 are telling the three, there are only three Castle
12 bondholders, who should be their lead counsel when two of
13 those three disagree.

14     Mr. Schwartz and Mr. Kaufman, who are represented by the
15 Mesh firm and by my firm, disagree with the action of the
16 majority, and the majority are essentially Taj Mahal
17 bondholders' counsel.  I would like to point out --

18         CHIEF JUDGE GERRY:  Mr. Matusoff, you haven't had a
19 chance to be heard.

20         MR. MATUSOFF:  Yes, your Honor.  I don't want to be
21 redundant, but I do want to reflect upon two or three points.
22 The first point is that in Mr. Greenfield's recent letter to
23 you, he has noted that I participated by phone in the
24 so-called organizational meeting that was held in New York and
25 that I abstained from voting.

1    I think it's appropriate, perhaps, rubber-stamping what
2  Mr. Specter has said, but let me express it myself because I
3  am the one who was a participant.  The reason that I abstained
4  from voting in regard to the organization was really twofold.
5  Number one, as Mr. Specter has just stated, Taj people
6  dominated that entire meeting by numbers, if nothing else, and
7  I felt it highly inappropriate with the three Castle cases and
8  the expressed and reexpressed opinion, particularly of Mr.
9  Wechsler, that there is a conflict between Taj and between
10  Castle, and let's leave it at those two for the moment, that
11  the Taj people should have the prerogative of designating the
12  lead counsel for Castle, if indeed there is a conflict.  And
13  assuming for the moment that there is such a conflict, then
14  the three and only the three who are in Castle should
15  determine who should lead that group.  So that was the reason
16  that I abstained and the vote was not unanimous.

17    It was unanimous amongst those who voted, which was
18  really either six or seven, and I really don't know how many
19  people participated, but it was at least six or seven in New
20  York who were part of the Taj group and Mr. Labaton voting for
21  lead counsel for Castle.  That made no sense.

22    The other reason that I abstained was a difference of
23  opinion as to whether or not there should be an overall lead
24  counsel.  And when they talked about a coordinating counsel,
25  again I abstained from voting on that aspect of it because

1  there was not a coordinating counsel.  These were two Taj

2  people who were dominating the entire proceeding.  If there is

3  to be, and again I leave that to the court as to whether it is

4  necessary to have coordinating counsel, my concept was at that

5  time and still is that the coordination should be amongst

6  representatives of the three groups:  One from Taj, one from

7  Castle and one from the third entity.  Mr. Labaton would,

8  almost of necessity, have to be the one from the third

9  entity.  So that he's the only one --

10          CHIEF JUDGE GERRY:  Who represents Plaza, yes.

11          MR. MATUSOFF:  He's the only one that represents

12  Plaza.  So to get him out of the duality, plus also to give

13  Castle appropriate representation, the three Castle heads or

14  the court itself should determine who should lead the Castle

15  group, not seven Taj people who allege a complaint.  And Mr.

16  Specter has already stated it.  And that is in the very

17  statements that Mr. Greenfield has made up to this point, he

18  has already shown a certain prioritization towards Taj.

19          Now, I don't think that that is up to him or up to the

20  defendants to determine, I think that's up to the court.  But

21  at least there should be participation from representatives of

22  those other entities.  And that again Castle and Plaza should

23  not be placed on the back burner until that matter is heard by

24  the court.  I say the court meaning both of your Honors; who,

25  if such a prioritization is to be made, should make that

1  determination themselves and not counsel of Taj, who has no

2  interest at all in Castle and who has no interest at all in

3  Plaza.

4     Let me address once again the issue of conflict relative

5  to both Mr. Specter's plaintiff and our plaintiff.  If there

6  is a conflict, it's resolved -- number one, it arises because

7  our firm, the Mesh firm, also represents only one individual.

8  He does happened to own bonds in both entities, Taj and

9  Castle.  But that's resolved in two ways.  The first one I

10 believe that Mr. Specter has referred to, and that is that

11 lead counsel in a sense, and we would not be lead counsel in

12 the Taj case, apparently, or if we were, we wouldn't be in the

13 Castle case, but lead counsel is going to direct that.  The

14 second thing, and perhaps more important, is that those

15 individuals become only names in the consolidated complaints

16 which of necessity are going to have to be filed here.

17 They're merged into the mass and the conflict in that sense is

18 completely resolved.

19     My own opinion would be if they're going to be

20 consolidated complaints that it should not be two, but that

21 there should be three complaints, one for each of the entities

22 so that they can be dealt with separately and perhaps the

23 three entities themselves may have to be separated.  Again, I

24 leave it to the court as to whether a coordinating counsel is

25 necessary on top of it, but if there is coordination, it

1   should be coordination by representatives of the three

2   respective entities.

3         CHIEF JUDGE GERRY:  Rather than two who represent

4   solely Taj interests, right?

5         MR. MATUSOFF:  And who, as I said, and it's more

6   important to us from the Castle point of view, who elected

7   lead counsel.  A minority of one determining for the three

8   Castle cases.  The Taj people haven't elected a Castle

9   representative.  If there is to be a Castle representative,

10  again, your Honor, it should be determined by Castle people.

11        (Short pause).

12        MR. MATUSOFF:  Your Honor, if I may direct one more

13  point, that is in --

14        CHIEF JUDGE GERRY:  No, please, I have a lot of

15  people, if you will.

16        MR. MATUSOFF:  Certainly.

17        THE COURT:  With your indulgence.

18     Mr. Wechsler.

19        MR. WECHSLER:  I hadn't had the opportunity to answer

20  your original question.  You were asking whether I had a

21  change of heart about the separate representation?

22        CHIEF JUDGE GERRY:  Yes.

23        MR. WECHSLER:  I think, your Honor, there are three

24  separate cases here, basically, and ordinarily separate

25  representation of each would have been provided for; there

1   were several reasons they weren't.  For one, Messrs. Specter

2   and Matusoff started trying to ride from the inception two

3   horses in opposite directions.  They brought what is clearly a

4   conflict situation into this by representing a plaintiff,

5   trying to represent two classes, one for Taj and one for one

6   of the casinos; nobody disputes the fact that there is a

7   direct conflict in that situation.

8       Now, maybe they can represent there is one client since

9   he bought both bonds, but in a class action where they're

10  representing everybody, they certainly can't purport to

11  represent both and there is nobody who disputes that.  They

12  themselves have taken that position regarding conflict, or at

13  least not disputed that position.  So, I think that in a sense

14  they disqualified themselves from being in a lead position by

15  representing a plaintiff who himself had bought both bonds,

16  and in terms of prosecuting a class action, they couldn't

17  possibly be in the running.  Nonetheless, if they wanted --

18          CHIEF JUDGE GERRY:  Although they could represent in

19  a non-class structure an individual investor.

20          MR. WECHSLER:  In a non-class structure, certainly

21  they have a right to represent their investor.

22          CHIEF JUDGE GERRY:  But once they get into a class

23  position --

24          MR. WECHSLER:  They have a right to stay in the

25  class, to opt out, to have their case to be before the court.

1       The other thing is that there were two organizational

2   meetings at my office, I invited everybody to attend all of

3   them, and they were both boycotted, except that Mr. Matusoff

4   did attend by telephone the second one and abstained.   The

5   first one Mr. Specter said that it was premature because the

6   panel had not moved.   So we invited everybody to a second one

7   and there were 12 people in my office; several had two people

8   present, ten or 12 people.   There were representatives of 11

9   of the cases -- eleven of the, not cases, but plaintiffs in

10  the case present at that office by telephone or in person.

11  And there was a lot of discussion at that meeting and prior to

12  the meeting.   We came up with what we think is as good an

13  organization as possible under the circumstances.

14      The designation "coordinating counsel" was specifically

15  chosen so that there wouldn't be a conflict involved because

16  the coordinating counsel would be for the purpose that I

17  mentioned, to try to see that the case ran smoothly, that

18  there wasn't unnecessary duplication of depositions or

19  production of documents.   We might be able to have a single

20  document depository, for example, not that the Taj people

21  would decide what the Plaza people are going to --

22          CHIEF JUDGE GERRY:   What about that apprehension?

23  Could that apprehension be addressed as suggested by somehow

24  incorporating a voice for the non-Taj interests in the

25  coordinating?

1        MR. WECHSLER:   Your Honor, I think we have addressed
2   it by, first of all, including in the order, as we have our
3   proposed order to your Honor, the case management order that
4   we proposed to you, that the duties of the coordinating
5   counsel be limited to those specific matters, so that nobody
6   ought to be apprehensive in that regard.

7        Secondly, if you added -- if you added someone to that
8   committee, it would certainly seem to me inappropriate to add
9   the Specter/Matusoff people who themselves are Taj people.
10  You would have a third Taj representative on the coordinating
11  counsel.  Now, the structure is cumbersome enough, but
12  cumbersome because of necessity, not cumbersome because of any
13  other choice.  But it does try to pare it down to a sensible
14  minimum and a sensible organization and it's one that was
15  voted on unanimously, as I say, with one boycotting party and
16  one abstaining party.  And I don't think that anything that
17  I've heard indicates that it should be changed, because we
18  have taken into account the views of all counsel over a period
19  of many months, we've structured something that doesn't create
20  any conflicts where everybody is in agreement.

21       And, as I said, adding a third coordinating counsel,
22  while I think it would be unnecessary, if you added someone it
23  would have to be, I would think, the Goodkind Labaton firm as
24  third coordinating counsel because at least they don't have
25  conflict and the kind of direct conflict that adding an

1  additional Taj representative would.

2          CHIEF JUDGE GERRY:  I see what you mean.

3          MR. WECHSLER:  But there is no conflict there because

4  these are coordinating counsel, the setting up of a date of

5  deposition, the setting up of a document depository, of the

6  communication with defendant's counsel to set up meetings with

7  them, the setting up of meetings among plaintiffs' counsel;

8  those types of duties don't impinge upon anyone.  And if

9  somebody felt that they were aggrieved that the coordinating

10 counsel were exceeding their authority, they could complain.

11 The party that complained would be presumably Mr. Labaton.

12          CHIEF JUDGE GERRY:  Is there some disadvantage or

13 unfairness if, as you just mentioned, the Goodkind firm was

14 added as coordinating counsel and thus having within that

15 function thereby a voice for Castle and Plaza cases?  And even

16 assuming, as I know that you would urge, that the restrictions

17 on the function of the coordinating counsel provide adequate

18 protections anyway?

19          MR. WECHSLER:  I don't have any strong objection or

20 reservation regarding that.

21          CHIEF JUDGE GERRY:  Feeling about that.

22          MR. WECHSLER:  This is an organization we think

23 works, we think eliminates conflicts, but if your Honor felt

24 that that would be a more satisfactory arrangement, we can

25 certainly operate in that manner effectively with that minor

United States District Court - Camden, New Jersey

1    change in this organization and I would have no strong

2    objection to it.

3         CHIEF JUDGE GERRY:  One further question.  How about

4    the idea that there is a conflict between the Plaza and Castle

5    interests sufficient to require separate lead counsel for

6    Plaza?  Do you have a feeling about that?

7         MR. WECHSLER:  Well, I don't have a strong feeling.

8    I mean, they are really quite separate case.  The conflict

9    between the Taj and both other casinos is real, it's patent;

10   the conflict between the two casinos both claiming that

11   they're entitled to something from Taj as between them, they

12   both have the same claims against the Taj interests and the

13   conflict there is subtle, if it exists at all.  They are

14   separate bondholders, they have separate indentures, they have

15   separate claims.

16        Since I'm a Taj representative, I haven't attempted to

17   analyze the trust indentures to see whether there is anything

18   that would really amount to what I could consider a conflict.

19   I don't -- I think Mr. Labaton and others might address that

20   point more appropriately.  It's certainly not inappropriate to

21   have separate representatives of those.  I'm not sure it's a

22   necessity, certainly, as the Taj versus the other casinos.

23   And the allegations of the complaint are quite different for

24   purposes of discovery, for example, even as to the Plaza and

25   the Castle, since some of the claims involve questions

1  regarding the trust indenture, the documents produced might be

2  different, the personnel who were deposed might be different,

3  but I'm not sure that there is a conflict in the sense of the

4  direct conflict that there is.  There are just some

5  differences amongst them.  And I think that --

6          CHIEF JUDGE GERRY:  Thank you, Mr. Wechsler.

7     Mr. Labaton, what do you say about this?

8          MR. LABATON:  I think I can clarify it, really, by

9  way of an analogy, if your Honor will.  Take another type of

10  tort case, an airplane accident case, where one lawyer

11  represents two passengers in the same plane.  They may have

12  different damages, one may have a different injury, but that

13  lawyer can represent both of those injured people.  He could

14  not represent the pilot or the manufacturers of the

15  altimeter.  As the in this case, it would be the equivalent of

16  representing both the Taj and the Plaza and the Castle, but in

17  effect we're taking -- it's our view that in effect the same

18  injury was caused by the same conduct on two separate

19  entities.

20     And, in fact, in another analogy one can make, and maybe

21  closer to home in terms of the types of cases, you have

22  separate classes of securities which may have had different

23  effects because of the same conduct.  And it's quite typical

24  in a class action which is brought where the plaintiff class

25  member may represent the preferred stock, the bonds and the

1   common stock and separate classes of preferred stock, even

2   though the market impacts might have been different as a

3   result of conduct on each of those classes that comes out in

4   terms of allocation of damages.  And at that point, if a

5   conflict develops, one can address it.  But in terms of

6   establishing basic liability, in terms of establishing basic

7   damages, Plaza and Castle are identical in every single

8   respect.  They're the two passengers in the airplane, your

9   Honor.

10   CHIEF JUDGE GERRY:  You're suggesting that if there

11   is a conflict and if that conflict is identified only in the

12   damages feature, it should not, at this point in time, be

13   troublesome to us in organizing as we're seeking to do?

14   MR. LABATON:  Yes, your Honor, that is precisely my

15   suggestion and I don't -- and, in fact, as these cases usually

16   develop by way of settlement, those kinds of damages issues do

17   not result in conflict.  We've had lots of cases where you

18   have different damages, you typically have different damages

19   in a long class period depending upon when the purchase was

20   made.  The same counsel may represent the entire class, but

21   you may have 50 percent of the damages before a certain date

22   and a hundred percent after a date.  That's not a conflict,

23   never has been a conflict in a typical 10b-5 security fraud

24   action.

25   CHIEF JUDGE GERRY:  How about the other aspect that

1   we were talking about, that is adding a counsel who represents

2   Castle and the Plaza interests to the coordinating group?

3           MR. LABATON:  Your Honor, as Mr. Wechsler pointed

4   out, I don't think it's necessary at this time.  It's entirely

5   appropriate.  It was, in fact, discussed at the meeting which

6   we had at Mr. Wechsler's office and the group felt unanimously

7   that if the court felt it desirable, that my firm should be

8   appointed the third coordinating counsel; that was actually

9   discussed as a contingency, and we are prepared to serve.  And

10  I think that if your Honor thinks it's appropriate, we would

11  accept that role and we would fulfill it.

12          CHIEF JUDGE GERRY:  Thank you.

13          MR. SPECTER:  May I respond very briefly, your Honor?

14          CHIEF JUDGE GERRY:  Yes, yes, go ahead.

15          MR. SPECTER:  First, your Honor, we're not talking

16  about an airplane cash.  What Mr. Labaton is alleging is that

17  a gambler or gamblers went to the Taj Mahal to play and that

18  absent this wrongful conduct, they would have gone either to

19  the Castle or the Plaza.  And there is going to be a fight

20  about whether that gambler would have gone to the Castle as

21  opposed to the Plaza and that's where the conflict comes in,

22  and it's very real.

23          CHIEF JUDGE GERRY:  Does that conflict solely address

24  the assessment of damages?

25          MR. SPECTER:  I don't think so.  What if the gambler

1   would never have gone to the Castle at all or to the Plaza at
2   all? It's kind of an impact test. And everybody here's
3   talking about the potential bankruptcy of one or more entities
4   and the limited assets that may be available. How does Mr.
5   Labaton overcome the problem that he will face in having to
6   allocate limited assets among Castle people and Plaza people,
7   the argument that the Taj people raise to separate
8   themselves?

9       It should also be pointed out there were three
10  organizational meetings and there was no boycotts, your
11  Honors. There was a meeting scheduled, my office attended a
12  meeting at Mr. Greenfield's office, Mr. Matusoff's firm
13  attended. There was then scheduled another meeting to be held
14  on the third of January at Mr. Greenfield's office and it was
15  my intention to be there. At the last minute it was
16  rescheduled to take place on the second at Mr. Wechsler's
17  office. I was in Florida for a family vacation and said that
18  my firm wouldn't be represented. To suggest that there is
19  some kind of boycott --

20          THE COURT: Well, I think it's profitless to go back
21  into histories like that.

22          MR. SPECTER: That's why I didn't mention it at all
23  in my presentation.

24          CHIEF JUDGE GERRY: How about this business about
25  your own position, though, representing not just a single

1  investor, but in a class dimension Castle interests on the one
2  hand and Taj interests on the other?

3          MR. SPECTER:  It's clear --

4          THE COURT:  Is that wrong?

5          MR. SPECTER:  I don't think so, your Honor.  But it's
6  certainly clear at this juncture that if there were any
7  possibility that that kind of thing could be wrong, we are
8  not, in the context of any of the structures proposed, in a
9  position to be representing both groups.  There are seven Taj
10  cases and it's been agreed by virtually everybody in the Taj
11  cases --

12          CHIEF JUDGE GERRY:  You mean if you have a conflict
13  of fidelities that it is somehow redressed because other
14  people represent the conflicted principles?  I don't
15  understand that.

16          MR. SPECTER:  Well, first, I don't believe that there
17  is a conflict of fidelities.  This is, just as Mr. Wechsler
18  pointed out, a situation analogous, or Mr. Labaton did, to the
19  one where a single lawyer or law firm represents people who
20  purchased at differ periods during a class period and there
21  may be different formulas or different allocations among
22  them.  We represent a client who purchased two securities
23  issued by two different entities and he has claims against
24  each and could represent a claim against each, just as, to use
25  the airplane crash analogy, he were representing a class of

1    passengers against the manufacturer of the altimeter and the
2    manufacturer of the radar system.  There is no real conflict
3    or present potential conflict, there are two different
4    situations.

5            CHIEF JUDGE GERRY:  You are not representing a class
6    of investors --

7            MR. SPECTER:  Yes.

8            THE COURT:  -- but you're solely representing a single
9    client investor; is that all you're representing?

10           MR. SPECTER:  No, no, we are undertaking to represent
11   the class or classes of investors.

12           CHIEF JUDGE GERRY:  And that's not bothersome to
13   you?

14           MR. SPECTER:  No, your Honor.  If it were, we
15   certainly would not have commenced the action.

16           CHIEF JUDGE GERRY:  Do you disagree with what has
17   been said earlier regarding the presence of a conflict between
18   representing the Taj class interests on one hand and the
19   Castle and Plaza interests on the other and that that conflict
20   compels reasonably separate lead counsel for those two class
21   groups?  I mean, it's been suggested here or the reason has
22   been advanced why it's necessary to have a separate lead
23   counsel for Taj Mahal cases and a separate lead counsel for
24   Castle and Plaza cases.  Do you disagree with the conflict
25   that seems to compel that suggested differentiation?

1           MR. SPECTER:  Yes, I do.

2           CHIEF JUDGE GERRY:  Do you?

3           MR. SPECTER:  Other than to the extent that it's a

4   Castel/Plaza conflict, because in essence the Castle and the

5   Plaza are fighting over the same customers.  They're saying

6   that the Taj stole customers and you can't separate that out.

7   But with respect to the bonds, the basic 10b-5 violation,

8   whether there were any misrepresentations or omissions dealing

9   with the ability to pay the bonds to service the debt, what we

10  are talking about is what were the bonds worth, were there

11  frauds committed, and what was the real --

12          CHIEF JUDGE GERRY:  You think you could have single

13  lead counsel for Taj and Castle interests, for example?

14          MR. SPECTER:  I think -- I think that is possible,

15  your Honor, yes.

16          CHIEF JUDGE GERRY:  Yes, sir.

17          MR. MATUSOFF:  Your Honor, I'm a bit confused.  I

18  think Mr. Specter -- in fact, I know Mr. Specter and I know

19  myself are not advocating that we would be in league with the

20  two classes.  What we're saying is that the determination in

21  Castle, I think both of us concede that the majority of Taj

22  counsel have spoken and have designated their lead.  I think

23  that it is up to the court to determine if that is top-heavy

24  or not; and, if not, just one or perhaps two could be co-lead

25  for Taj.  But our claim is that within Castle itself that the

1  Castle counsel should determine.

2       Now, we have no conflict in this were we to be appointed

3  lead for Castle because the interests as lead for the class

4  subordinates the individual plaintiff who is being represented

5  in Taj by the lead counsel there, number one; and, number two,

6  who can consent -- who can consent to his counsel representing

7  only as to the one case.  The consolidated complaints sets

8  that forth.

9       CHIEF JUDGE GERRY:  Boy, that's an organization with

10 which I would be extremely uncomfortable.  That will not

11 happen.

12      Anybody else wish to be heard on this subject about

13 whether we ought to have three lead counsel or two as

14 suggested or whether we ought to have another representative

15 voice like Mr. Labaton on the coordinating counsel?  Mr.

16 Greenfield.

17      MR. GREENFIELD:  I guess I want to reiterate what Mr.

18 Wechsler said.  I think that the appointment of Mr. Labaton's

19 firm as a third would deal with the question of representation

20 of the each of the different interests at that level.  And

21 certainly from our perspective, we don't oppose that.

22      I should point out to your Honor too in speaking with Mr.

23 Posen about scheduling, it was done with specific approval of

24 Mr. Labaton and Mr. Wechsler and then Mr. Labaton has his

25 separate conversations with Mr. Trump's counsel toward the

1   same objective.  It's not that we were purporting to speak for
2   him without his consent.

3          CHIEF JUDGE GERRY:  Should I not be bothered with
4   their argument that there really is a conflict too between
5   Castle and Plaza in that ultimately they're going to be
6   arguing about to whom the Taj is responsible, whether to each
7   other, one or the other, and that that potential conflict may
8   well be aggravated by a perhaps likely situation where there
9   is not enough to go around, one of those cases?

10         MR. GREENFIELD:  I think your Honor's point is a good
11  one and I think there is the potential for that conflict.  I
12  think at present it does not exist.  I think it is definitely
13  likely, depending upon what scenario these cases follow, that
14  the conflict will be exacerbated.  At that time your Honor
15  certainly is free to appoint a separate counsel, if
16  necessary.  But at least as the cases are presently postured,
17  that conflict does not exist in any material way because, as I
18  have read the complaint in the Plaza/Castle case that Mr.
19  Labaton has, the claims are totally consistent.  It's not
20  fighting over individual clients or customers, it's rather
21  whether Mr. Trump disadvantaged both of those entities, and
22  therefore their bondholders, to benefit the Taj Mahal.

23         And you have to look at the complaint and what the
24  allegations are, not conceivably where they may go down the
25  road.  It is very possible down the road that that divergence

1    may be of importance, but at least as to the complaint in its

2    presence posture there is no conflict.

3              CHIEF JUDGE GERRY:   Okay.  Hold on.  Anybody else

4    wish to be heard?  Okay.

5              (Short pause).

6              CHIEF JUDGE GERRY:   Mr. Greenfield, if Mr. Labaton

7    were added to the coordinating counsel, which under your

8    suggestion had been comprised of your own firm and that of Mr.

9    Wechsler, would there be any need of a coordinating counsel if

10   all three, in other words, on the coordinating counsel would

11   be not just representatives of the Taj Mahal interests through

12   yourselves as lead counsel, but there would be representation

13   of all of the various interests and one would think then the

14   coordination might just as easily be achieved through and

15   among the lead counsel of all interests without a separately

16   identified and functioning coordinating counsel, is there

17   anything left for coordinating counsel to do?

18             MR. GREENFIELD:   Technically, no.  When I started my

19   remarks before, I pointed out to the court that in part there

20   was an element of a political consideration here

21   and --

22             CHIEF JUDGE GERRY:   Um-hum.

23             MR. GREENFIELD:   -- and it was, I guess, for the

24   purpose given of the fact that there were nine plaintiffs,

25   nine firms that had brought Taj Mahal cases, a feeling that

1   there ought to be some sense of a deliberative body or voice

2   that we would be responsive to.  But, certainly --

3           THE COURT:  Well, you are suggesting --

4           MR. GREENFIELD:  But, I think we have that anyway.

5           CHIEF JUDGE GERRY:  -- that by retaining even so,

6   even with Mr. Labaton, even with him being added, there might

7   still be some sort of psychological or political end served by

8   continuing the coordinating committee?  I can't read those

9   things.  If it serves any purpose, I suppose it's no great

10  harm in continuing it.

11          MR. GREENFIELD:  I think, your Honor, there would be

12  a lot more people in the courtroom here today if Mr. Wechsler

13  and I hadn't been very successful at convincing the other

14  plaintiffs' counsel that their interests would be well

15  served.

16          CHIEF JUDGE GERRY:  Under this structure with a

17  coordinating committee and so forth.

18          MR. GREENFIELD:  Right.

19          CHIEF JUDGE GERRY:  Well, I don't want to upset that.

20          MR. GREENFIELD:  In that sense it's political, your

21  Honor; and I wish it weren't so, but it's a necessary evil, I

22  think.

23          CHIEF JUDGE GERRY:  Yes.  All right.  Mr. Wechsler.

24          MR. WECHSLER:  I would think also it has the -- at

25  least the structure that I prefer, but not strongly, is that

1    maybe one person to be the coordinating counsel.  However,

2    that would cause political problems in part but it would make

3    it easier if there were.  The second best would be two because

4    the defendants at least have to have a contact point to deal

5    with people and say:  Hey, let's set a deposition for this and

6    that.  So probably the preferably is one, if you are going to

7    have one; two was the political best; and three is certainly

8    workable under these circumstances.

9        The structure we came up with was both political and

10   sensible and workable we thought, but we could live with

11   other -- we could live with three as well.

12           CHIEF JUDGE GERRY:  All right.

13           (Short pause).

14           THE COURT:  Well, anybody else wish to be heard on

15   this?

16       The court will approve the proposed organization of

17   counsel as moved by Mr. Greenfield, and perhaps others,

18   subject to the condition, however, that Mr. Labaton be

19   included as coordinating counsel.

20           MR. GREENFIELD:  That's perfectly acceptable to us,

21   your Honor.

22           CHIEF JUDGE GERRY:  All right?  And I am not

23   insensitive to the concerns and apprehensions, Mr. Specter,

24   that you raise regarding the lack of separate lead counsel for

25   the Plaza as distinguished from the Castle interests, and I

1   intend, and as I'm sure that Judge Simandle will as well, try

2   to monitor as carefully as we can that situation.  And I'm

3   sure that you would, you and perhaps others would, and you're

4   invited to do so, bring it to the court's attention if you

5   perceive at some juncture that there is a conflict of interest

6   that needs be reconsidered by the court.  But, until that

7   time, this court will approve and grant the motion with that

8   single condition, Mr. Greenfield.

9          MR. GREENFIELD:  Thank you, your Honor.

10         MR. SPECTER:  As I said before, I appreciate the

11  court's sensitivity to the issue and now hopefully all

12  plaintiffs' counsel can go about a joint effort doing what we

13  set out to do.

14         CHIEF JUDGE GERRY:  It is a bothersome development,

15  and if it developed, of course, we would -- the interests

16  would be sufficiently critical to reconsider and try to

17  address it, which we will do if that happens.  Now, I'm

18  presently here -- yes, sir.

19         MR. MATUSOFF:  Your Honor, in order to possibly face

20  that problem at this point, would the court consider, since

21  there are only three cases in Castle, of providing for an

22  executive committee of the three firms in Castle?

23         CHIEF JUDGE GERRY:  No, I'm sufficiently enmeshed in

24  all these schematics that for a poor farm boy from South

25  Jersey, I've been stretched about as far as I can.

1       So, that brings me to my next point.  I'm here for the
2   purposes of intimidation and things like that, the person who
3   really knows what he's doing, of course, is Judge Simandle,
4   who has, he's going to kill me for saying this, but has
5   established a national reputation for the handling of complex
6   litigation.  And it will be he that will be monitoring your,
7   we hope, very substantial progress and it would be to Judge
8   Simandle always that you address your problems and questions
9   as time goes by.  And you may be sure that -- incidentally,
10  for those of you who are not familiar, you're out Pinky Cohill
11  land in Pittsburgh and I don't know --

12          MR. MATUSOFF:  Dayton, Ohio, Judge Rubin.

13          CHIEF JUDGE GERRY:  Oh, yes, Judge Rubin.  And I'm
14  not sure how completely those jurisdictions, I'm more familiar
15  with the Western District of Pennsylvania, and while they do
16  so, I'm sure that Chief Judge Cohill wouldn't mind me
17  suggesting that we employ our Magistrate Judges to the full
18  extent that the law permits.  Our magistrates come as close to
19  Article III judges and the powers that they exercise as we can
20  possibly extend to them.  And while Judge Simandle may be
21  under certain legal constraints given a particular kind of
22  issue that might come before him which might require a report
23  and recommendation or some other kind of reference to me, you
24  may be sure that I will give his recommendations very, very
25  heavy weight and consideration.

United States District Court - Camden, New Jersey

1       So, with that, Jerry, do you want to go over some of the

2   lists of things that you had in mind for further discussion

3   about case management?

4           JUDGE SIMANDLE:  Sure.

5           CHIEF JUDGE GERRY:  Okay?

6           JUDGE SIMANDLE:  Thanks a lot.  First, Chief Judge

7   Gerry and I do appreciate the efforts that you've gone to

8   already in coordinating your proposed discovery.  We've looked

9   over the discovery memos and the proposed pretrial order and

10  I'd like to turn discussion to that.

11      I'd also like to try to get you out of here as soon as we

12  can this afternoon because the weather is getting so bad.

13  Does everyone have a copy of the Proposed Pretrial Order

14  Number One, which actually becomes Case Management Order

15  Number Two?  I think that's as good a point of departure as

16  any.

17          MR. GREENFIELD:  Your Honor, will the court be

18  revising this or shall we just have retyped a revised

19  version?

20          JUDGE SIMANDLE:  I'll probably be revising it in

21  accordance with the discussions and the determinations that

22  are made this afternoon, including the lead counsel

23  determination that Judge Gerry just made.

24          MR. GREENFIELD:  Okay.

25          CHIEF JUDGE GERRY:  Excuse me, Jerry.  I'm sorry to

1   interrupt.

2       Mr. Specter, did you just recently receive some of this,

3   some of this organizational thing from Greenfield just today

4   or yesterday?

5           MR. SPECTER:  I never received it.

6           CHIEF JUDGE GERRY:  Never received it at all.

7       Mr. Greenfield, the court received it on January the

8   eighth and I understand that Mr. Specter has not received it

9   at all, and I just make a suggestion to you that in order to

10  make these meetings not only productive but fair, we have to

11  get these things in the hands of other counsel appropriately

12  and sufficiently before the return date so that he might

13  choose to address or submit something further to the court.

14          MR. SPECTER:  I assume that we will receive copies of

15  all papers.

16          CHIEF JUDGE GERRY:  But I'm concerned about not

17  getting these things ahead of time.

18          MR. RIVKIN:  Your Honor, if I may respond to that

19  briefly, and I don't mean to belabor the record, but only

20  because it's a sensitive point.  Mr. Matusoff asked that a

21  copy of the proposed pretrial order be faxed to him and that

22  was done.  Mr. Matusoff purported to speak on behalf of not

23  only his firm, but also Mr. Specter's firm when he said it was

24  only necessary to fax a copy of the order to him and that the

25  order could be regular mailed to all other counsel, which was

1    done.

2          MR. SPECTER:  Why was one faxed to Mr. Matusoff only

3    necessary?  I don't want to get into this.

4          MR. MATUSOFF:  That was a mistake.

5          MR. SPECTER:  We will get all papers.

6          CHIEF JUDGE GERRY:  Try to be very, very sensitive,

7    of course, as I'm sure that you would ordinarily be, to your

8    responsibilities, of course, to communicate fully with your

9    adversaries and colleagues in this matter, and promptly.

10         Excuse me, Jerry.  Go ahead.

11         JUDGE SIMANDLE:  One of the functions of lead counsel

12   is going to be to have a joint service list prepared.  That's

13   one of the responsibilities in this order.  And the provisions

14   for service and so forth are discussed in the proposed order.

15         But let's start with paragraph Roman numeral one,

16   coordination.  Any problem with that?

17         Roman numeral two, any problems with those?

18         Okay, let's move to number three.

19         MR. MATUSOFF:  Whoa, whoa, we're going awful fast.

20         JUDGE SIMANDLE:  Sorry.  Okay, any problem with

21   number two?

22         MR. SPECTER:  I suppose for the -- we are still on

23   two?  I'm sorry.  Mr. Matusoff.

24         MR. MATUSOFF:  Yes, I believe there is because it

25   refers to master docket coordinations.  I am still concerned,

Case 1:90-mc-00919-JBS   Document 87   Filed 07/15/92   Page 46 of 67 PageID: 628

Page 46

1    no matter how the organization is set up, that there is to be
2    a consolidated complaint for both Castle and Plaza, which that
3    entails the caption aspect of it.  In the original file, I
4    think there is a certain complexity in paragraph two of Case
5    Management Order Number One, and perhaps that can be
6    simplified, in that it relates to all cases, that it relate to
7    Taj cases, that it relate to Castle cases, or that it relate
8    to Plaza cases.  If we have to enumerate the individual docket
9    numbers for those that don't relate to all.  The captions are
10   going to be very complicated.

11          MR. GREENFIELD:  This is something --

12          MR. MATUSOFF:  But you're relating it back to the
13   first order.

14          MR. GREENFIELD:  As a practical matter, your Honor,
15   the caption would just have the MDL number and then if, for
16   example, the pleading related to the Castle and Plaza bonds,
17   it would relate to three separate numbered cases under that.
18   And that's all it would be, it would be a reference in the
19   margin of the caption, it would not mean having three separate
20   captions.

21          MR. MATUSOFF:  Well, paragraph two says if such paper
22   does not relate to all of these actions, the individual docket
23   numbers assigned by, etcetera, etcetera, shall also be listed.

24          MR. GREENFIELD:  That means in the margin, that's all
25   it is, Bob.

1          JUDGE SIMANDLE:  Well, the proposal changes that.  As

2     I read the proposal, paragraph two of the proposal, plus

3     paragraph four of the proposal which speaks of caption of

4     cases, permits for that kind of an abbreviated caption.  So if

5     it applies to only Taj cases, then that's what you would say

6     under Roman numeral four.

7          It might be that this can be made a little bit more clear

8     than having two separate paragraphs, but I think it is an

9     improvement over what had been entered.

10          MR. MATUSOFF:  I would only object then to the, "all

11     the Trump Castle and Trump Plaza cases."  Make those -- break

12     that up, "all Trump Castle" and "Trump Plaza cases" in four,

13     on page four.  I think that would simplify it.  I don't want

14     to get very in detail, but I think that this during the period

15     of the case can become complicated.

16          MR. LABATON:  If there are differences, it may very

17     well be the initial pleading would have both cases and on many

18     of the others maybe it would have both.  Where there's a

19     distinction, obviously we'd have a distinction.  But,

20     ordinarily it would be -- it would depend on the -- for

21     example, our complaint involves Castle and Plaza and the

22     caption would read -- an amended complaint or consolidated

23     complaint would say Trump Castle and Plaza.  And I see

24     nothing -- the purpose of, obviously the purpose of the

25     caption is to identify the cases to which it relates and we

 1  will do that.

 2          MR. SPECTER:  Procedure is not a problem.

 3          JUDGE SIMANDLE:  I think that's a good point.  These

 4  are just given as examples anyway.

 5          MR. LABATON:  Right, that's correct.

 6          JUDGE SIMANDLE:  And sometimes you'll need some of

 7  them, sometimes you won't.

 8          MR. LABATON:  That's right.

 9          JUDGE SIMANDLE:  I'll make that change.

10          MR. BARRY:  Your Honor, may I make a suggestion?

11          CHIEF JUDGE GERRY:  Yes.

12          MR. BARRY:  Now that we finally have coordinating

13  counsel in the case, might it not be more appropriate to sit

14  down with coordinating counsel and work out the details of

15  this proposed order and submit an agreed upon version to your

16  Honor within a week?

17          JUDGE SIMANDLE:  Well, that can be done, but I think

18  that we're pretty close to finishing this up.

19          MR. BARRY:  Okay.

20          JUDGE SIMANDLE:  I think the overriding concern is

21  what is going to happen within the next two weeks.  Is there

22  going to be two consolidated complaints, for instance?  That's

23  one of the proposals that we're coming to here.  Or should

24  there be three consolidated amended complaints?  We're

25  speaking now of paragraph six.

1        MR. SPECTER:  Respectfully, three, your Honor.

2   Everyone here has acknowledged that there are three distinct

3   cases, whatever we call them, three distinct classes, and

4   consolidated complaints should be tripartite.  And I'm afraid

5   here we're going to have to address the question whether

6   anywhere in this litigation there is a Plaza bondholder.  I

7   mentioned that twice.

8        JUDGE SIMANDLE:  Yes.

9        MR. SPECTER:  Exactly.  And no one seems to care.

10       JUDGE SIMANDLE:  Well, Mr. Labaton cares.

11       MR. LABATON:  We propose as the basis for the

12   consolidated complaint to use our complaint with additional

13   material that's contained in the complaints that have been

14   filed on behalf of Castle bondholders.  We think that

15   complaint now does not include any conflicts, it is an amended

16   class action complaint which was filed in the Southern

17   District of New York and we think it is a complaint that would

18   be the basis for a complaint on behalf of Castle and Plaza

19   bondholders.

20       MR. SPECTER:  Is there a plaintiff who bought Plaza

21   bonds or holds them?  This is a problem that I have to come to

22   grips with.

23       JUDGE SIMANDLE:  Is there a disadvantage to having

24   three complaints?

25       MR. GREENFIELD:  Yes, your Honor, if I may.  Number

United States District Court

1   one, I think it needlessly complicates what I think is an

2   already complicated situation.  Number two, Mr. Specter would

3   like to have a different case than the one that is pled right

4   now.  And the one that is pled right now has no inherent

5   conflicts and I don't understand why you want to make one.

6          JUDGE SIMANDLE:  Mr. Specter.

7          MR. SPECTER:  If he's asking, I'd be happy to

8   answer.  Is there anybody in this litigation who is a Plaza

9   bondholder?

10         MR. GREENFIELD:  There is not, there is no --

11         MR. LABATON:  There is nothing in the complaint that

12  says there is.

13         MR. GREENFIELD:  And given what the claims are, there

14  is no need for their to be one.  The defendants might want to

15  argue differently, but that's their argument.

16         MR. SPECTER:  But somewhere down the road we're going

17  to run into all of these problems and I think they should be

18  aired now.  And that's part of the conflict.  We ought to have

19  coordinating counsel for Plaza and Castle who doesn't

20  represent anybody who has Plaza bonds; now, before or ever is

21  representing the Castle people at the same time.

22         JUDGE SIMANDLE:  Well, he does represent, I take it,

23  a plaintiff who owns Castle bonds.

24         MR. LABATON:  Yes.

25         MR. SPECTER:  But in the Plaza.  And how do we

1  consolidate Plaza and Castle when there really is no Plaza?

2       JUDGE SIMANDLE:  Well, what would be your client's

3  standing to object to that complaint, if it were

4  consolidated?

5       MR. SPECTER:  Conflict of interest.  There is the

6  conflict again.

7       MR. MATUSOFF:  Your Honor --

8       JUDGE SIMANDLE:  I don't see the conflict.  You said

9  three times, sir, there's a conflict between Plaza cases and

10  Castle cases, but other than as to what the damages might be,

11  I haven't heard anything else.

12       MR. MATUSOFF:  The potential collectibility, your

13  Honor.  I mean, if we do stand, as the court believes, in a

14  conflict position relative to our complaints, I certainly then

15  must stand up and assert the position of the plaintiff that I

16  do represent, and that is that he's entitled to be represented

17  individually, at least in an individual Castle complaint, and

18  not face potential conflicts with a Plaza complaint.

19       And there is a very serious problem of collectibility.

20  We have stated over and over again throughout these

21  proceedings that there is a bankruptcy pending for Taj, which

22  means that there are limited assets that are going to be

23  available, and there is going to be a fight as to what

24  bondholders get what, let alone for the individual defendants

25  out there and their limited resources and the allocation of

1  those remedies back.

2          MR. LABATON:  None of the defendants in our case are

3  the Taj Hotel, it's individuals and other persons.  And as far

4  as I know, there is no imminent bankruptcy with respect to the

5  defendants in the case that we filed.

6          MR. MATUSOFF:  You keep talking about your case,

7  there are three Castle cases.

8          MR. SPECTER:  What harm is done by filing three

9  complaints to deal with the three issues?

10         JUDGE SIMANDLE:  Okay, let there be three, and I'll

11 leave it to lead counsel to work it out.

12         MR. GREENFIELD:  Thank you, your Honor.  May I

13 suggest --

14         JUDGE SIMANDLE:  If it is not able to be worked out,

15 then we're going to have to revisit the lead counsel

16 situation.

17         MR. GREENFIELD:  Your Honor, Mr. Matusoff may have

18 suggested something that would solve some of his concerns

19 about conflicts, and particularly given his own internal

20 problem.  Perhaps if his claims were denominated individually,

21 then he could be free to represent whomever he wanted to

22 without the problem that he -- he would seem to have this

23 problem I think almost with every issue.  And I'm concerned

24 that if we go forward, we're going to hear it on every single

25 point.  Why should he want there to be a separate Plaza

1  complaint?  I just don't understand that.

2  JUDGE SIMANDLE:  Well, isn't this the time, though,

3  for the restructuring of the pleadings, which also means, I

4  suppose, the restructuring of who represents whom, subject to

5  the client's approval?

6  MR. GREENFIELD:  I understand that, your Honor.  I'm

7  merely saying that if the party who is saying he represents

8  the Plaza interest doesn't -- has defined a class that is an

9  unitary class of Plaza and Castle bondholders because they are

10  identically harmed, then we only make more work for the court

11  and for all of us if we have a third complaint, and I'm

12  putting aside this issue of should there be separate

13  representation.

14  I respect Mr. Matusoff's and Mr. Specter's arguments, but

15  it just makes more work for everyone.  And if it comes down to

16  it down the road that we need a separate complaint for that

17  "sub class" that doesn't presently exist, I think we can do

18  it.  If anybody, it would be the defendants that would argue

19  for separation, and I don't hear them doing that.  I don't

20  know why Mr. Specter or Mr. Matusoff would be doing it, other

21  than to create more complexity.

22  JUDGE SIMANDLE:  Do the defendants have a view?  Who

23  would like to speak?

24  MR. POSEN:  With respect to Mr. Greenfield, this

25  issue which we noticed in the pleadings before coming down to

1   the conference today, your Honors, is a serious one and I

2   don't think that there is anyone who has spoken today who by

3   simple amendment of the pleadings pending can purport to

4   represent the Plaza bondholders in a separately standing

5   complaint.  Not that I want to undertake needless energies,

6   but it occurred to me that perhaps two complaints, which we

7   would then review for whether it properly stated causes of

8   action and properly stated the class allegations, would be the

9   most expeditious way to get quickly to the issue of whether

10  Mr. Labaton's revised complaint would be sufficient to proceed

11  with, because I don't think anyone can bring a Plaza case

12  right now.

13      It may be that properly stated the Plaza and Castle case

14  can be pled together, but I would appreciate not being bound

15  or having waived by my listening to all this.  And I think

16  that if we could agree on those two complaints and set a

17  deadline for their filing, if I may, I would like to then join

18  in the other half of Mr. Greenfield's description of our

19  all-way conversation of this afternoon, we would like the time

20  promptly to turn to discussions of the possibility of

21  settlement to focus primarily on the Taj Mahal case, which, as

22  your Honor likely has read, is much further along in its

23  financial restructuring plans.  And in the same time undertake

24  the necessary legal research and drafting of motions to

25  dismiss, which we believe properly can be made, if the revised

1    complaints bear reasonable relationship and resemblance to the
2    ones that have collectively been denominated the Taj Mahal
3    actions.  And I think we can do all of that in 60 to 75 days.
4              JUDGE SIMANDLE:  Well --
5              MR. POSEN:  Judge Simandle, forgive me for continuing
6    briefly.  The reason that Mr. Barry and I suggested that we
7    confer for a week is that the conversation I had with Mr.
8    Greenfield and with Mr. Labaton took place after this was
9    drafted.  I have not consented to the dates that were in here,
10   despite the enthusiastic description in the covering letter,
11   and I think we might save some time for all of us if, with the
12   counsel now named by the court in place, if we promptly turn
13   to it.  And I think within a week we could get you a writing
14   that I hope would be suitable to your Honors and move on most
15   effectively and efficiently that way, if that's acceptable.
16             JUDGE SIMANDLE:  Any objection?
17             MR. GREENFIELD:  That's fine by us, your Honor.
18             JUDGE SIMANDLE:  All right.  Then as to the proposed
19   consolidated complaint issue, should that await the further
20   conferring among counsel?
21             MR. POSEN:  Yes.  I would hope that we would -- we
22   will include a proposal regarding that issue in the revised --
23   what I take it we will call Proposed Pretrial Order Number
24   Two, which we will --
25             MR. GREENFIELD:  Fine.

Page 56

1          MR. POSEN:  -- which we will submit, shall we say, a

2    week from -- week from Monday next.

3          MR. LABATON:  It's a holiday.

4          MR. POSEN:  You're right, Martin Luther King.

5          MR. BARRY:  We will have it back next week.

6          MR. POSEN:  We'll submit it to both your Honors on

7    Friday in a week.

8          MR. SPECTER:  The only difficulty is we won't have an

9    opportunity to be heard on our issue of whether it's to be two

10   or three consolidated complaints.

11         MR. POSEN:  We'll certainly send you the stuff and

12   you should write to the court then.

13         MR. SPECTER:  I should write to the court?

14         MR. POSEN:  We will send you --

15         JUDGE SIMANDLE:  Yes, Mr. Greenfield.

16         MR. GREENFIELD:  I think Mr. Posen really touched on

17   the issue.  I think these are issues that either are summary

18   judgment issues, or more likely class certification issues.

19   In other words, whether Mr. Labaton can properly represent the

20   broader class that he seeks.  And for that reason, I think the

21   time to deal with these issues is their motion for class

22   certification rather than fighting over what is merely a

23   procedural order.  I don't think anybody is saying this is

24   effecting substantive rights.

25         (Short pause).

United States District Court

1           CHIEF JUDGE GERRY:  Good bye, everybody.

2           JUDGE SIMANDLE:  All right, thank you very much, your

3     Honor.

4           CHIEF JUDGE GERRY:  Thank you, Jerry. If you want to

5     change my mind, go ahead and change it.

6           (Judge Gerry leaves the courtroom).

7           JUDGE SIMANDLE:  Have a seat, we'll be done in two

8     minutes.

9        Judge Gerry's also troubled by this allegation that there

10    is no Plaza bondholders represented in this litigation.  The

11    requirement for three new complaints rather than two would

12    have a tendency to flesh that out.  What we both fear is if I

13    just say now okay, counsel, work it out, we're going to have

14    the same loggerheads ten days from now.  So, I would rather

15    take care of it this afternoon.

16          MR. GREENFIELD:  My concern, your Honor, is that the

17    issue is ultimately a legal one that requires substantial

18    briefing and that's why I think Mr. Posen's comments were

19    quite appropriate because they really deal with either whether

20    a plaintiff can or cannot properly frame a complaint defined

21    by that plaintiff to encompass a broader class, and it comes

22    up either in a motion for summary judgment or a motion --

23          MR. LABATON:  Partial summary judgement.

24          MR. GREENFIELD:  Partial summary judgment or a motion

25    with respect to class certification, where Mr. Posen might

1   very well, or Mr. Barry might very well argue that Mr. Labaton

2   cannot properly represent anybody other than Castle

3   shareholders.  The problem is --

4        JUDGE SIMANDLE:  Certainly it cannot be decided

5   today.

6        MR. GREENFIELD:  That's correct.

7        JUDGE SIMANDLE:  But the issue of whether there's two

8   pieces of paper or three has to be decided.

9        MR. GREENFIELD:  I don't think see that it does.

10       MR. POSEN:  I don't believe anyone can utter the

11  complaint separately standing.  There is no plaintiff that has

12  a separate complaint.

13       JUDGE SIMANDLE:  So why would you oppose there being

14  three then?

15       MR. POSEN:  Just so that I don't have to make a one

16  sentence motion to dismiss.  I would just as soon have as much

17  of it done in this multidistrict case as is legally proper and

18  permissible to do, that's why.  Because I just as soon not

19  have the Plaza cases begin --

20       MR. BARRY:  Somewhere else.

21       MR. POSEN:  In six months.  And I'm not trying to

22  advocate the propriety of Mr. Labaton exceeding the proper

23  bounds of his representation, but if he says he can do it, I

24  would just as soon see it written and then we'll have it

25  litigated.

1          MR. LABATON:  Since I am responsible for the

2    complaint, let me state our position, your Honor.  Mr. Posen

3    is quite right that if we had a separate complaint, we could

4    not have a separate Plaza complaint.  On the other hand, and

5    there are different authorities, there are cases that have

6    said that if you are a securityholder in one entity, you can

7    sue on behalf of that entity and an entity closely enough

8    related with respect to the facts as to have suffered the same

9    loss by the same conduct.  There are cases that go the other

10   way.  And it depends; it's sometimes very fact oriented.  It

11   depends on the circumstances of the case.  I'm not presuming

12   to say that we're going to win on this one, your Honor, if we

13   litigate it, but it's certainly permissible to file a

14   complaint that says there's a Castle bondholder, I am suing on

15   behalf of my bondholders and Plaza bondholders who were

16   injured by the same conduct in the same way.

17         Just as if I, and by way of analogy, if I bought a stock

18   in March, I might sue on behalf of persons who bought between

19   January and December, because those securityholders, even

20   though I didn't buy on every day, were injured in the same way

21   by the same conduct.

22         There are cases where there have been a series of

23   prospectuses issued where a person who only bought on one

24   prospectus can sue on behalf of the other prospectuses because

25   the same misstatements were made in all prospectuses.  I don't

1   presume to say that we're going to win this at this time.   As

2   Mr. Greenfield said, it's a substantive issue.   But I could

3   not today file a complaint simply on behalf of Plaza

4   bondholder.   I could file a complaint by a Castle bondholder

5   on behalf of Plaza and Castle bondholders, and that's what I

6   propose to do, your Honor.

7   JUDGE SIMANDLE:   Very well.   You've been appointed

8   the lead counsel on behalf of the Plaza and Castle

9   bondholders, and so your ability to formulate a consolidated

10   complaint, it will be tested in the future as to its

11   legality.   May as well be tested sooner.   So, let's go back to

12   the concept of the two; one on behalf of the Taj, one on

13   behalf of the Castle and Plaza.   Let me predict that we're

14   going to wish we had three, but prove me wrong.

15   MR. MATUSOFF:   Your Honor, that's to the prejudice of

16   our plaintiffs now because they can be thrown out-of-court

17   also.   And I resent someone who doesn't have a plaintiff and

18   who obviously, despite what we talk about, our conflicts, who

19   obviously has a conflict in prejudicing my plaintiff.   Now,

20   I'm talking about my plaintiff and Mr. Specter's plaintiff and

21   Mr. Greenfield says we go out and handle it yourself, that's

22   what MDL is all about.   And they brought the case here where

23   we originally brought our case and we belong in there.

24   MR. GREENFIELD:   I'm not suggesting that you go back

25   to Cincinnati or anyplace else, I'm suggesting that if you

1   have that concern, you can protect that interest by filing an

2   individual action, that's all.  We're not prejudicing a Castle

3   plaintiff if in fact --

4          MR. LABATON:  If a Castle plaintiff in the case is

5   dismissed -- because the case would not be dismissed in toto,

6   it would be dismissed as to the Plaza bondholders.  The Castle

7   bondholders are not prejudiced by that formulation.  I would

8   add separate allegations for separate claims on behalf only of

9   Castle bondholders, incorporating Mr. Matusoff's claims that

10  would be -- there would be separate counts in that one

11  complaint that will protect his bondholders separately.

12         MR. WECHSLER:  I would also suggest that if they have

13  opposition to that, they can voice that opposition when and

14  after the complaint is filed in the context of a class action

15  motion if they think that there should be two classes

16  represented.

17         MR. MATUSOFF:  Your Honor, let me say further that

18  all that does, I mean we're stating it right here, is we're

19  causing delay to the Castle situation to -- to the Plaza

20  situation while the inevitable motion against the other entity

21  comes about, plus, and I can see it now, we're utilizing the

22  resources of counsel, which I am sure will appear in their

23  load star and fee application on something that should not

24  involve the Castle people.  That's just highly inappropriate.

25         JUDGE SIMANDLE:  The complaint, as I understand it,

United States Distri

1   would be a consolidated complaint; it would consist of

2   separate counts.  And it's going to be Mr. Labaton's duty to

3   coordinate in a reasonable way the needs of everybody

4   following as a plaintiff within those groups.  And, so, I'll

5   leave to it Mr. Labaton to do that which he has promised to do

6   this afternoon, which to coordinate those interests.

7       If there is motion practice directed at part of the

8   complaint, the rest of the complaint survives, and so that

9   much at least ought to be agreed upon or, rather, it's so

10  ruled by the court that there shall be two consolidated

11  amended complaints.  That's without prejudice to positions

12  that may hereafter be taken by motion, but for purposes of

13  streamlining the pleading, it does seem that the two

14  consolidated complaints is the way to go at this time.

15      As to the remaining --

16          MR. POSEN:  Excuse me, your Honor.

17          JUDGE SIMANDLE:  Yes, Mr. Posen.

18          MR. POSEN:  When will the -- I'm just trying to

19  follow along.  I'm at the bottom of page five now.  Is there a

20  proposed date.

21          MR. LABATON:  We're going to get together.

22          MR. POSEN:  We're going in do that?  That's fine.

23          JUDGE SIMANDLE:  Yes, let's leave the dates and the

24  scheduling and the time to answer and everything to the

25  agreement of counsel and then I'll wait for the January 18th

1    submission.

2              MR. LABATON:  Okay.

3              JUDGE SIMANDLE: Is there any other vital point that

4    has to be decided this afternoon as to these things?

5              MR. GREENFIELD:  Your Honor, the only other thing I

6    might suggest is because of the number of counsel, it might be

7    useful, at least, tentatively to schedule a future conference

8    before your Honor down the road.  It may become unnecessary,

9    but at least with all of us here we can pick a date.  In

10   Atlantic City?

11             MR. POSEN:  Sorry, did I hear you say Atlantic City?

12             JUDGE SIMANDLE:  Looking at the future of this

13   litigation as you see it, what would be a good time for a

14   follow up conference?  You want to go about 60 days, 90 days?

15             MR. GREENFIELD:  My thinking is prompted by the

16   possibility that something may develop over the next couple of

17   weeks, not related to the motion practice or the answers or

18   that sort of thing, your Honor, but seems to me a month, a

19   month --

20             MR. POSEN:  A little longer.  I thought Judge

21   Simandle's idea of 60 days is --

22             JUDGE SIMANDLE:  And if something breaks sooner, then

23   request a conference.

24             MR. GREENFIELD:  That's fine, that's fine.

25             JUDGE SIMANDLE:  Let's me check with my chambers so I

United States District

1   can suggest couple of dates to you.  I'll be right back.

2            (Short recess).

3            JUDGE SIMANDLE:  How about Wednesday, March 20th?

4   How does that look?  Or Monday March 18th?

5            MR. WECHSLER:  March 20th.

6            MR. LABATON:  Time of day, your Honor?

7            CHIEF JUDGE GERRY:  Those days I'm free all day, so

8   we can fix a time.

9            MR. GREENFIELD:  Late morning, perhaps?

10           CHIEF JUDGE GERRY:  Late morning?

11           MR. LABATON:  Eleven o'clock, say?

12           MR. GREENFIELD:  Eleven is fine on the 20th.

13           MR. POSEN:  Which days?

14           MR. GREENFIELD:  Wednesday the 20th at 11_AM.

15           MR. POSEN:  Is the afternoon okay for everybody?

16           MR. GREENFIELD:  If we can do it early in the

17  afternoon, your Honor.

18           JUDGE SIMANDLE:  One o'clock, is that okay?

19           MR. POSEN:  Yes.

20           JUDGE SIMANDLE:  Okay, Wednesday, March 20th at one

21  o'clock.  And if things develop quicker than that, then please

22  confer among yourselves through lead counsel and then somebody

23  get in touch with me right away.

24           MR. GREENFIELD:  We're going to try and do as much of

25  the discovery on a fairly informal basis so that we don't have

1   to come in.

2            JUDGE SIMANDLE:   All right.   Well, thank you very

3   much.   Court's adjourned.

4            (Proceeding then ended)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4

5

6

7

8                    C E R T I F I C A T E

9

10

11

12           I, THEODORE M. FORMAROLI, Official Court Reporter
    for the United States District Court for the District of New
13  Jersey, Certified Shorthand Reporter and Notary Public of the
    State of New Jersey, do hereby certify that the foregoing is a
14  true and accurate transcription of my original stenographic
    notes to the best of my ability of the matter hereinbefore set
15  forth.

16

17

                                Theodore M. Formaroli
18                              Official U. S. Reporter
                                N. J. Certificate No. XI433
19

20  DATE:    7-14-92

21

22

23

24

25