1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

2

3

IN RE: DONALD TRUMP CASINO
4   SECURITIES LITIGATIONS                    CIVIL ACTION
                                             MDL DOCKET NO. 864
5
    TAJ MAHAL ACTIONS                        90 mc 919
6

7        *FILED*

8        *JUL 1 5 1992*

9        AT 8:30                    UNITED STATES COURTHOUSE
                                    401 MARKET STREET
10       WILLIAM T. WALSH  M        CAMDEN, NEW JERSEY 08181
            CLERK                   MAY 1, 1992
11

12   B E F O R E:   THE HONORABLE JOHN F. GERRY, CHIEF JUDGE
                    DISTRICT OF NEW JERSEY
13

14
     A P P E A R A N C E S:
15

16       GREENFIELD AND CHIMICLES
         BY: MARK C. RIFKIN, ESQUIRE
17       ATTORNEYS FOR PLAINTIFFS

18       WECHSLER, SKIRNICK, HARWOOD, HALEBIAN & FIFFER
         BY:  JOEL C. FEFFER, ESQUIRE
19       ATTORNEYS FOR THE PLAINTIFFS

20       BERGER AND MONTAGHUE
         BY: TODD S. COLLINS, ESQUIRE
21       ATTORNEYS FOR THE PLAINTIFFS

22       ZWERLING, SCHACTER AND ZWERLING
         BY: ROBERT S. SCHACTER, ESQUIRE
23       ATTORNEYS FOR PLAINTIFFS
     APPEARANCES CONTINUED:
24

25

1

2

3

4

5    CLAPP AND EISENBERG
     BY: JOHN J. BARRY, ESQUIRE
6    ATTORNEYS FOR THE TRUMP DEFENDANTS

7    WILKIE, FARR AND GALLAGHER
     BY:  RICHARD L. POSEN, ESQUIRE
8    ATTORNEYS FOR DEFENDANT TAJ MAHAL

9    SHEARMAN & STERLING
     BY:  STUART J. BASKIN, ESQUIRE
10   ATTORNEYS FOR DEFENDANT MERRILL LYNCH

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25                        THEODORE M. FORMAROLI, C.S.R.
                          OFFICIAL U. S. REPORTER

Case 1:90-mc-00919-JBS  Document 88  Filed 07/15/92  Page 3 of 34 PageID: 890

1          THE COURT:  Okay, everybody, would you enter your
2   appearances, please.

3          MR. POSEN:  Richard Posen of Wilkie, Farr and
4   Gallagher.

5          MR. BARRY:  John J. Barry, Clapp and Eisenberg,
6   for the Trump defendants.

7          MR. BASKIN:  Stuart Baskin, Shearman and
8   Sterling, for Merrill Lynch.

9          MR. FEFFER:  Joel C. Feffer of Wechsler Skirnick,
10  plaintiffs.

11         MR. COLLINS:  Todd Collins, Berger and Montaghue,
12  for plaintiffs.

13         MR. SCHACTER:  Robert Schacter, Zwerling,
14  Schacter and Zwerling.

15         MR. RIFKIN: Mark Rifkin, Greenfield and
16  Chimicles, for the plaintiffs.

17         THE COURT:  Okay.  Everybody onboard?  Good.  All
18  right, the court has carefully studied your submissions,
19  we're familiar with them and generally with your arguments
20  and have passing familiarity with the citations to which
21  you have referred us.  So keep that in mind, if you will,
22  when you argue, okay?

23      We'll hear from the moving party.

24         MR. POSEN:  May it please the court, I am Richard
25  Posen, I represent, together with John Barry, the Trump

1 defendants in these consolidated cases. I hope to be

2 brief, your Honor, and to be mindful of your opening

3 comments on your familiarity with the record.

4         As your Honor obviously knows --

5         THE COURT: Oh, excuse me. I'm sorry. I invited

6 you to go ahead, Mr. Posen, and I forgot that for your

7 guidance and everybody else's I would like to limit the

8 argument today, this afternoon, to the "bespeaks caution"

9 line of argument and the related sub-issues, of course,

10 that that suggests. To the extent that you feel that you

11 can, try to focus on that area.

12         I'll be asking questions from time to time and I

13 think most of the questions will in turn relate to that

14 area. To the extent they don't, I wouldn't blame you for

15 being perplexed, but don't share your perplexity with me.

16         You may proceed, Mr. Posen. Go ahead.

17         MR. POSEN: Thank you, your Honor. As I presume

18 then, as your initial comments make absolutely clear to me,

19 you are very focused on the issue before the court today,

20 notwithstanding the excessive amount of paper we've used to

21 get it to this ripened stage, and that is whether the

22 prospectus for the sale of the 675 million dollars of Taj

23 Mahal bonds fairly and accurately described the proposed

24 investment to a reasonable investor. More specifically, I

25 submit, the whole case is about whether the risk of this

United States District Court - Camden, New Jersey

1 investment was adequately disclosed. And I would submit,
2 your Honor, in perhaps exaggerated boldness, that even the
3 "bespeak caution" line of cases which we have argued
4 forcefully are dispositive are not necessary for the court
5 to dismiss this complaint with prejudice. The text of the
6 prospectus itself is a complete defense.

7 I will venture unfairly out of the record for a
8 minute by noting that one of my star colleagues, Mr.
9 Hiller, who sits behind me and is the author of this
10 prospectus, has a Princeton education. They know the
11 English language, they know that words even in these
12 troubled times still have meaning. And the answer to this
13 case, and the highly debated sentence to which I will
14 return in a minute, is that the words of this prospectus
15 make it absolutely clear what the risks were and the
16 alleged defects of the prospectus are answered by the text,
17 by the very words of the document itself.

18 THE COURT: And reasonable minds could not so
19 differ?

20 MR. POSEN: And reasonable minds could not so
21 differ I think even vaguely, or irrational ones couldn't.

22 THE COURT: Even, even as a result of abiding by
23 the rule that we must draw those inferences from facts
24 asserted in the complaint most favorable to the non-moving
25 party?

1     MR. POSEN:  Absolutely, your Honor.  That is a
2  necessary requirement of the rule and happily conceded by
3  me in this setting.  This is, this document, Mr. Hiller's
4  perfect prospectus we call it, it is literally a paradigm
5  of complete disclosure.  It's long and it's boring, but it
6  is exactly what the structure of our securities laws call
7  for in today's world.

8     As your Honor's alluded to, the Courts of Appeals in
9  rapid succession, at least five of them have now adopted
10 the what we refer to by shorthand as the bespeaks caution
11 doctrine and I like to think of that doctrine as standing
12 for the proposition that plaintiffs can to longer assert a
13 complaint in which the sole basis is a dramatic decline in
14 market value and whose sole legal logic is fraud by
15 hindsight.  Those kind of cases simply no longer state a
16 claim in the First, Second, Sixth, Eighth and Ninth
17 Circuits and we believe in short order, or certainly hope,
18 in the District of New Jersey as well.

19     THE COURT:  Let me ask you a question.  This is
20 in reference to the Korean Airlines admonitions that courts
21 in positions such as this in this case should give close
22 consideration to the out-of-circuit precedent, in this
23 instance the precedent from the transferor, in cases such
24 as this, the multi district situation, where we, the
25 transferee jurisdiction, should give "close consideration"



1  to the appropriate precedents of the Second Circuit in this
2  instance, transferor.

3       What does that mean in this case and how does that
4  translate for our purposes into Second versus Third Circuit
5  precedent?

6       MR. POSEN:  I think, your Honor, it means that as
7  a matter of multi district law you ought to pay close
8  attention to the Second Circuit's holdings in the Luce case
9  and in the more recent Oppenheimer decision; that the Third
10  Circuit, notwithstanding arguments to the contrary by the
11  plaintiffs in their answering brief, have not addressed --
12  the Third Circuit has not addressed the bespeak caution
13  doctrine either directly and certainly not implicitly in
14  the Herskowitz case that they rely on to that point.

15       In sum, I think you have a blank slate on "bespeaks
16  caution" itself in the Third Circuit and you are well
17  instructed by the law in the Second and ought to adopt it
18  here.  I hope I've answered you on that point.

19       THE COURT:  I think you have.  Let me carry on
20  with some more questions, if I may.

21       What's the legal interaction between the bespeaks
22  caution doctrine and the principle that misrepresentations
23  are normally actionable and that statements made without a
24  reasonable basis are deemed untrue?  What is the
25  interaction of these two principles of doctrines in this

Page 8

1  case and which do we consider first?

2         MR. POSEN:  I have to admit I hadn't considered

3  the order in which they're considered.

4         THE COURT:  All right.

5         MR. POSEN:  But, quite plainly, there is a

6  tension between those doctrines, as the court has

7  enunciated.

8         THE COURT:  The court may be required to treat

9  with the order in which they are considered because the

10  outcome may be considerably different, or not, depending on

11  the order in which they are considered.

12     But setting the order aside, setting the order aside,

13  what are the interactions of these two doctrines, the

14  latter one of which we're customarily familiar, and you

15  would have us familiarize ourselves in the Third Circuit

16  now with the bespeaks caution doctrine?  How do they

17  interact in this case?

18         MR. POSEN:  I think the interaction is different

19  in different cases.  But in a case where the text provides

20  the first guidance, I would apply the bespeaks caution

21  doctrine in the first instance as well.  Reserving, to be

22  sure, for the court the question whether it is permissible

23  nonetheless to be fraudulent in an utterance in a document

24  that might mislead a reasonable investor.  And I would

25  argue that the application fairly made of the bespeaks

United States District Court - Camden, New Jersey

1  caution doctrine can answer in a dispositive way the

2  question of the second doctrine, if the court could

3  conclude, and I think it's fair to do that in this case,

4  that the cautionary language in this prospectus was so

5  complete, so repetitive, so obvious and so well designed to

6  guard the alleged fraudulent statement.

7  THE COURT:  Then it would obviate the findings

8  necessary to apply the other doctrine, the second

9  doctrine?

10  MR. POSEN:  Exactly.  Otherwise, otherwise, and

11  maybe I can tie your question into what I was going to turn

12  to next in my argument --

13  THE COURT:  It would be decent of me to permit

14  you to do so.  Go ahead.

15  MR. POSEN:  Otherwise, what is poor brother

16  Hiller back at Wilkie Farr in 1988 going to write?  I, in

17  preparing the argument, I really did try to figure out why

18  I have begun to be bothered in the arguments that we have

19  made more informally on this subject both before you and

20  Judge Simandle by the almost invective-like and inflated

21  language of fraud that the plaintiffs used to talk about a

22  document that is so straightforward in its enunciation of

23  what this investment is about.  And it occurred to me in

24  considering my annoyance, since I've been doing this stuff

25  for some years now, why was I getting so bothered?  And I



1 think I was bothered because I'm here today defending the

2 lawyering skills of my partner. And I think I'm defending

3 something more than that, your Honor, we're talking

4 about -- and given today's news, I don't mean to presume on

5 issues of social greatness or magnitude of the kinds of

6 things that are happening in the public, but we are talking

7 about an important part of how the business world, an

8 important part of American society, governs itself. What

9 are the lawyers who live in the ''34 act and ''33 act

10 world and what are the investment bankers and what are

11 people who are worried about capital formation going to do

12 if they're going to raise money for a project such as this

13 one? And I think in a minute I can describe the dilemma

14 that I think people face in --

15 THE COURT: Yes, excuse me, go ahead. This is an

16 interesting argument to me because my next question is

17 going to be right, I think, down the barrel. Is this a

18 policy -- that is the bespeaks caution policy -- is this a

19 policy that we should and should want to follow in this

20 circuit? And doesn't its application effectively nullify

21 some of the public policies that undergird the securities

22 laws protections? Do you see any problem --

23 MR. POSEN: Absolutely not.

24 THE COURT: -- of any public policy, any

25 inconsistency or injury or potential undermining of the

United States District Court - Camden, New Jersey

1 | regulatory practices and theories in the securities field?

2 | MR. POSEN: Absolutely not, your Honor. I try to

3 | avoid --

4 | THE COURT: You started to talk about that.

5 | MR. POSEN: I try to avoid 12(b)(6) motions that

6 | take on a statutory scheme that's been in existence for 50

7 | years. I dread those kinds of arguments and, indeed, my

8 | argument and the one I was trying to -- that I was going to

9 | talk about in relation to good old Hiller back in New York

10 | is is that there must be a way for lawyers and bankers and

11 | businessmen accurately to describe the business that they

12 | are about to undertake and to raise money for debt or to

13 | raise money for equity or to do other financial

14 | transactions that involve prospectuses, proxy statements or

15 | the other regulated, regulatory documents that are

16 | circulated to the public under the guidelines and very,

17 | very complex regulatory scheme that the '33 and '34 acts

18 | encompass.

19 | And I think, your Honor, to respond very directly to

20 | your question, that the bespeaks caution doctrine is an

21 | endorsement of the fundamental concept that we govern

22 | ourselves by in this world, which is disclosure, not

23 | judgment, not business judgment. Not should you buy the

24 | Taj bond, but if you buy the Taj bond, this is the good

25 | news, and this is the bad news; this is what you need to



1 know to make a reasonable business judgment.

2 I think not merely, not merely -- the late Justice

3 Douglass when he was an early SEC commissioner, different

4 than someone from a very different part of the political

5 spectrum, from the commissioners appointed by President

6 Regan and President Bush, don't differ at all in the

7 fundamental idea that what the federal scheme is intended

8 to do is not to make investment decisions but to require

9 adequate disclosure.

10 And, indeed, I don't think the plaintiffs really have

11 a quarrel with me about that. They're saying that the

12 disclosure was inadequate, they're unable to describe it I

13 think in this case other than quarreling with the quality

14 of the business venture as it turned out after the fact.

15 But I don't think the bespeaks caution doctrine in any way

16 undermines the securities law policy at all. It simply

17 says that people are not going to be sued and go through

18 discovery anymore if they're given a fair telling of the

19 story.

20 THE COURT: You're not suggesting, are you, that

21 the bespeaks caution doctrine should be in any way an

22 avenue by which misleading, materially misleading,

23 inadequate disclosures, fraudulent disclosures, failures to

24 disclose critical material facts could be excused simply by

25 some sort of cautionary statement at the tail-end somewhere

1  or up front for that matter or anywhere else --

2            MR. POSEN:  It is an interesting --

3            THE COURT:  -- so as to immunize that party from

4  responsibility otherwise?

5            MR. POSEN:  There is no immunization available.

6  You can't give yourself a shot, I don't think, your Honor.

7  I mean there is, I suppose, a theoretical extension to the

8  absurd almost of the doctrines in extreme in which there is

9  a tension between those concepts, but "bespeaks caution" as

10 applied in the cases that we've relied on so heavily and as

11 I'm arguing before you today, does not immunize a fraud.

12 But what I -- can I turn to the specifics of the problem as

13 we confront it in the securities industry?

14           THE COURT:  You have also said, have you not,

15 that if the prospectus bespeaks caution, in the sense that

16 you believe the doctrine should be applied, it does not

17 cancel out in effect falsity or misleading omission?

18           MR. POSEN:  Material falsity.

19           THE COURT:  Material, material.

20           MR. POSEN:  That's correct, your Honor.  My

21 analysis of --

22           THE COURT:  Should a court, finding in the

23 prospectus the satisfaction of the doctrine for its

24 application if that were so, is it conceptually possible

25 for the court to thereafter consider and find material

1 misrepresentation? Once the doctrine is found applicable

2 to the prospectus, is that the end of the ballgame there?

3          MR. POSEN: I think so, your Honor.

4          THE COURT: I think that's what you suggested,

5 isn't it, yes, the doctrine is?

6          MR. POSEN: Yes. I mean I think, I think, if I

7 anticipate the concern that you are telegraphing, it is

8 that the second half of that inquiry might somehow be

9 ignored. And I believe fairly applied, the second half of

10 that inquiry has been subsumed by the proper application of

11 part one. And let me turn to the specifics --

12          THE COURT: And the --

13          MR. POSEN: No, I guess not.

14          THE COURT: And the bespeaks caution provisions,

15 those cautionary provisions, do they have to bear any

16 relationship to the particular areas in this case -- the

17 subjects in this case are of alleged misrepresentation,

18 material misrepresentation or nondisclosure -- must there

19 be a relationship of some kind?

20          MR. POSEN: I suppose in order for them to be

21 fair cautions, there has to be some kind of relation. I

22 would not want to restrict the doctrine or the scope of the

23 cautions too much by its iteration today in a theoretical

24 way in how focused the caution has to be to another issue

25 either stated or not in the prospectus. But it has to be a

Page 15

1  fair warning.

2          THE COURT:  All right, fair enough.  Let me see

3  if I have to ask any other questions.  Yes, go ahead, I

4  think we've cover the parts I want.  Go ahead.  Excuse me

5  for the interruptions.

6          MR. POSEN:  I'm happy to try to answer them, your

7  Honor.

8      I have, fueled by the outrage of the attack on my

9  partner's honor, tried come up with a shorthand device to

10 describe my reaction to the plaintiff's assault on his

11 perfect prospectus and I have devised the name of the

12 corollary or inverse to the bespeak caution doctrine and

13 it's called edit to win.

14     And the plaintiff's brief in this case does simply

15 that very thing.  And this editorial process is a direct

16 response to your Honor's last question, which is:  Need the

17 cautions fairly relate to the alleged infraction?  And the

18 famous sentence which we've written to you about ad nauseam

19 and I repeat again here -- which doesn't show up till page

20 28.  We're usually accused in cases like this of hiding the

21 bad news.  This time we've put all the good news all the

22 way on page 28.  It said that:

23     The partnership believes that funds generated from

24 the operation of the Taj Mahal will be sufficient to cover

25 all of its debt service (interest and principle).



1      That's the gist of it.  That's the fraud.

2      Referring back to the Princeton Doctrine, I think the

3  next sentence in this prospectus ends the inquiry, other

4  circuits notwithstanding.  Plain common sense tells you

5  that it is not a fraud if the sentence is followed by the

6  words, English words with meaning:

7      No assurance can be given, however, that actual

8  operating results will meet the partnership's

9  expectations.

10      That's the next sentence of the text.  It's omitted

11  from the argumentation provided by the plaintiffs.

12      THE COURT:  And you would argue that that

13  demonstrates the clearest kind of direct relationship

14  between the caution and that to which it relates.

15      MR. POSEN:  In a sense, the sentences, one has to

16  follow another, and they did without an interruption.  But

17  more, more than that, your Honor, reading this document,

18  and it appears I think both attached to our codefendant's

19  brief and to the affidavit I've submitted as an exhibit --

20  this is what it actually looks like, your Honor.

21  (Indicating) I don't know if you've had an opportunity to

22  look at this part of the documentation, but this is a sort

23  of statutorily required cover and then there is a summary

24  which is also required by regulation to appear in that

25  order.  But the very first thing that appears in this



1  document after the cover and the summary in the front is
2  not the traditional item, it's not what comes later, the
3  company, it's history, the building, the Taj, our hopes of
4  the future, the financials, what comes next is, we've
5  written it out, "Special Considerations."  And you can't
6  see it from here, but you'll see it in the exhibit.

7       And in italics before you get to the text of the
8  whole book it says before making a decision to purchase any
9  of the bonds, prospective purchasers should consider
10  careful the following factors among others set forth in
11  this prospectus which could materially adversely affect the
12  operations of the partnership and its ability to make
13  necessary payments to the company to meet the debt service
14  requirements of the bonds and the security for the bonds.
15  I won't read you all nine pages that follow.  16 special
16  considerations.

17       Poor Hiller.  He thought they wouldn't be able to
18  sell the bonds.  I mean, I imagine, he'd written nine pages
19  of prospectus text of special considerations with that
20  italicized premise which specifically goes to the very
21  issue alleged to have been fraud.

22       My argument, your Honor, is that the text, more than
23  the cases even, the text governs.  There must be, if people
24  are going to be able to issue prospectuses, sell bonds and
25  stock in this society under the regulatory and statutory

1　framework with which we live, a way that you can accurately
2　write what you mean and not be sued because the bonds
3　declined in value.

4　　　I would conclude, other than answering any other
5　questions, your Honor, by referring to the cases. And in
6　that regard, I thought about them, I looked at them last
7　night. I recalled that, and I think your Honor is aware,
8　that we recently had an opportunity to rehearse this
9　argument before Judge Simandle in connection with an
10　argument about the discovery. And I am, in referring to
11　that conversation, fully mindful that the subsequent order
12　is not the law of the case, wasn't intended to be; it was a
13　ruling on discovery and is not in any way binding here.
14　Nonetheless, Judge Simandle's comment in the course of that
15　argument was more pointed and exactly the one that I would
16　like to conclude with. He said at one point in words or
17　substance to the plaintiffs in the course of that
18　argument: I considered these cases very carefully and I've
19　read them and I tried to distinguish them from this case
20　and I couldn't. I think that's a fair representation of
21　Judge Simandle's comment. If it's not, I adopt the words
22　and suggest to you that this case is well within the bounds
23　of those in light of the text itself. These cases ought to
24　be dismissed and ought to be dismissed with prejudice.

25　　　　　THE COURT: And you say we have a clean slate

1  here in the Third Circuit and you do not believe that there

2  are any existing, therefore, precedents in the Third

3  Circuit that could be inconsistent with or in effect or

4  even discourage the application or adoption of the bespeaks

5  caution doctrine in this circuit.

6          MR. POSEN:  That is a precise and accurate

7  summary of my position, the Herskowitz case on expert

8  opinion notwithstanding.

9          THE COURT:  Okay.

10          MR. POSEN:  Thank you.

11          THE COURT:  Thank you very much.

12          MR. BASKIN:  Good afternoon, your Honor.  I'm

13  Stuart Baskin from Shearman and Sterling.  I will be very

14  brief since you wanted to confine the argument to this one

15  point and Mr. Posen addressed it so concisely.

16      I would remind the court that my particular client is

17  here purely as a Second Circuit defendant.  Every case in

18  which Merrill Lynch was sued on, we are visitors from the

19  Second Circuit and, indeed, the only allegation in the

20  complaint about Merrill Lynch is that we were the

21  underwriter, we were only sued on the prospectus.

22      A point worth making, your Honor, on choice of law.

23  I fully agree with Mr. Posen, there is certainly nothing in

24  this circuit that will preclude utilization of the bespeaks

25  caution doctrine.  Moreover, with respect to the Second

 1 | Circuit transfer cases that are here, as we briefed in our
 2 | brief, there really are two lines of analysis as to which
 3 | choice of law to follow.  I believe the better line of
 4 | analysis is that the Second Circuit's case law should
 5 | provide a strong source of support, close consideration to
 6 | your Honor.  There is, indeed, another line of analysis
 7 | that says the Second Circuit case law is absolutely
 8 | preclusive here, and we cite those in our reply brief later
 9 | on.  But I am happy to deal with reality that whether you
10 | look at the Second Circuit case law, the First Circuit case
11 | law, the Sixth Circuit case law or the Eighth Circuit case
12 | law or the Ninth Circuit case law, that 15 circuit court
13 | judges of all political stripes agreed that the doctrine of
14 | bespeak caution fully conforms with the securities laws and
15 | is compatible with the goals and objectives of the
16 | securities laws.

17 | Let me address, if I can, some of the questions your
18 | Honor raised very briefly, some of the concerns.

19 | It is not a pole; on the one hand bespeaks caution,
20 | and on the other hand misstatement.  As Mr. Posen said, the
21 | question of whether there is a misstatement is subsumed in
22 | the question of whether the prospectus contains suitable
23 | and appropriate warnings.  Because, remember, your Honor,
24 | the test for materiality, and it's not new here, your
25 | Honor, it's been the case since Northway, the test of



1  materiality is you have to look at the totality of the
2  disclosures.

3      In the case of the First Circuit in the <u>Romani</u> case,
4  which we cite, the First Circuit says you don't isolate
5  specific sentences.  You don't turn to page 28 of the
6  prospectus and say:  Look, we could find a sentence in the
7  prospectus that looks bad and if you delete the sentences
8  that follow and if you delete the nine pages that precede
9  it that sentence is a bad sentence.

10      THE COURT:  Excuse me for interrupting, but are
11  you troubled at all procedurally here, aren't you asking in
12  the bespeaks caution doctrine and its application, aren't
13  you asking the court in effect to assess the adequacy of
14  the disclosures of risk from the face of a complaint with
15  all of the requirements, some of which we've mentioned,
16  that apply to motions for dismissal?  Does that suggest
17  that a motion for dismissal may not procedurally be the
18  appropriate vehicle to decide this matter?

19      MR. BASKIN:  Well, I think motions to dismiss,
20  your Honor, is an appropriate vehicle.  Let's look at it in
21  two respects.  First, in terms of sheer precedent, that is,
22  of course, exactly what the Second and the First and the
23  Sixth Circuit did, they disposed of complaints on motions
24  to dismiss with prejudice, precisely because they said the
25  textual language is what it is, it's not going to get any

1 | better or any worse after discovery. The textual language
2 | is what it is in this prospectus. And what the court said
3 | was, and I think the test is a meaningful one, the court
4 | said, to use the phrase in the First Circuit, we're going
5 | to read the cautionary language, we're going to read the
6 | risk factors, we're going to take them in their totality,
7 | not isolated, we're going to look at them in connection
8 | with each other and what we are going to ask is did the
9 | disclosure document disclose the risks of the investment in
10 | a meaningful way? And if it did, the First Circuit said,
11 | the prospectus cannot be challenged as a matter of law.

12 | The Second Circuit adopted a very similar position,
13 | your Honor. They said we'll look at the total -- totality
14 | of the disclosures and we'll ask ourselves whether the
15 | disclosure document sets forth the fundamental nature of
16 | the investment.

17 | THE COURT: The principle of most favorable
18 | inference doesn't bother you in this process?

19 | MR. POSEN: No, I think again it is subsumed in
20 | the process in the sense that you cannot focus -- you do
21 | not apply the most favorable inference to a sentence
22 | standing alone. What you must look at is in applying that
23 | construct, what are the totality of the disclosures? Did
24 | they provide a human being who read the prospectus with
25 | meaningful disclosure, in the words of the First Circuit,



1 | or with fair disclosure, in the words of the Second?

2 | THE COURT: Okay. What if this court permitted

3 | the plaintiffs to amend? I ask you to assume that, assume

4 | that this court permitted the plaintiffs to amend their

5 | complaint so as to add the Laventhol report, would that

6 | complaint so supplemented and amended still be subject to

7 | dismissal?

8 | MR. POSEN: I believe, your Honor, it would be

9 | impossible to amend it with that or anything else, and let

10 | me explain why. Let's first take the generality and then

11 | we can get to the Laventhol report specifically. And the

12 | generality is that the prospectus says what it says. If

13 | the Laventhol report was bearish on the Taj, and frankly

14 | let's put that to the side, if it was bearish on the Taj

15 | and the complaint were amended to reflect that, what the

16 | Laventhol report would mean in saying it was bearish on the

17 | Taj was that the combination of factors, growth in the

18 | marketplace of Atlantic City, the likelihood of the Taj

19 | achieving a fair share of that market -- of that growth in

20 | the marketplace, the likelihood of Mr. Posen's clients

21 | running this casino in an efficient way, all of those

22 | factors would lead to Laventhol's conclusion. But the

23 | point, your Honor, is that all of those factors are

24 | highlighted in the prospectus. The prospectus warns in the

25 | clearest of language so that no one could avoid it, the

1  prospectus warns this is an initial public offering, there
2  is no casino here yet to judge, we have no history running
3  a -- we have no history running a casino of this size.  No
4  one has, the prospectus says.  You've got to bear the
5  possibility, the prospectus says in nouns and verbs, that
6  if the construction project comes up late, that will have a
7  material impact on debt service.  The prospectus says again
8  in nouns and verbs that regulatory considerations or our
9  failure to achieve a fair market share, all of those would
10 have a material impact on our ability to service the debt.

11       So, in a generality, your Honor, the reason why the
12 First and the Second and the Sixth circuits have all said
13 that once you conclude that there is meaningful disclosure
14 or once you conclude there is fair disclosure about the
15 nature of the investment, that the proper relief is
16 dismissal with prejudice and not right to replead.

17       The reality is if any prospectus ever alerted
18 investors to what they were buying and the risks that might
19 occur, this is it.

20       Now, to take it further, to look at the Laventhol
21 report specifically as opposed to it generally, the
22 Laventhol report, your Honor, as we pointed out, was not a
23 report generated by the issuer, it was a public record
24 document, just as many, many other annalists' reports were
25 out there that were public record documents.  And the case

1   law, which they never dispute, we cite in our opening brief
2   and they never take issue with, the case law is as a matter
3   of law such public record information is not discloseable
4   in any event.  Moreover, the Laventhol report on its face
5   says it should not be used for the very purpose for which
6   they want to use it.  So the report in its specifics would
7   not advance the analysis here at all.  But, more
8   importantly, the general principle remains the same, your
9   Honor, as the First, Second and the Sixth Circuits made
10  clear in motions to dismiss and the Eighth and the Ninth in
11  summary judgment motions, but all the same because they all
12  looked to the text of the document, regardless when they
13  analyzed it, they only looked to the text of the document,
14  all those cases, and what they all said was no person who
15  read that document could fairly conclude that he was buying
16  other than a very risky piece of paper here.  And as long
17  as the risk is highlighted in a fair way and in a
18  meaningful way, that's all you can expect from prospectus
19  writers like Mr. Posen's partner.

20       And, again, unless the goal is to say that every
21  piece of paper that gets issued in the capital markets will
22  be subject to challenge three, four years later and someone
23  can weave his way through a prospectus, skip over the
24  capitalized and italicized warnings and go to a specific
25  sentence in the middle of -- buried in the middle of the

1  prospectus which has warnings that immediately follow it

2  which they also delete, unless the goal is to go through

3  this sort of exercise in every single case where an

4  investment turned sour, then I submit to the court that the

5  unanimous decision of those 15 judges makes ample sense

6  both as a matter of law and as a matter of public policy.

7  And that there is nothing they could amend, nothing they

8  could say, nothing they will do which would change the

9  language of the prospectus and the care and cautions with

10  which this prospectus was written.

11         THE COURT:  You also don't feel that under any

12  circumstances here that this court should permit more

13  latitude, permit the court's consideration of the materials

14  extrinsic to the current record that the plaintiffs might

15  urge upon the court and convert this to a summary judgment

16  motion of any kind?  You don't think that's necessary?

17         MR. BASKIN:  No, no, I do not believe that's

18  necessary.  I believe that --

19         THE COURT:  Or appropriate?

20         MR. BASKIN:  I would not urge that course because

21  I believe procedurally that this extrinsic data is legally

22  irrelevant.  I believe, moreover, as a practical matter you

23  end up the same place both ways, your Honor.  I think

24  whether you did that or whether you looked at the text of

25  the document under the canon of 12(b)(6) we'll be in the

1   same place.

2          THE COURT:  Okay, that inspired my first

3   questions.

4          Okay, thank you very much.

5          MR. POSEN:  Thank you.

6          THE COURT:  Everybody agree?  Go ahead.

7          MR. FEFFER:  Thank you, your Honor.  Joel Feffer

8   from Wechsler Skirnick.  Mr. Wechsler apologizes for not

9   being here as the Second Circuit has on short notice

10  scheduled an argument.  Today we moved to adjourn it on

11  consent and we lost.  So...

12         THE COURT:  Okay.

13         MR. FEFFER:  I feel somewhat inadequate after

14  these two brilliant presentations because I'm not certain

15  in my mind what the bespeaks caution doctrine is.  I know

16  that a number of courts have used the phrase in certain

17  contexts and I have great difficulty separating the phrase

18  from the context in which it was used.  And it brings to

19  mind a statement by Judge Friendly in Denny against Barber,

20  Second Circuit decision in 1978 which is cited to great

21  extent usually by defendants.  In dealing with a motion, an

22  appeal from a motion directed to the pleadings, Judge

23  Friendly noted as follows:

24         We see no profit in attempting to analyze these

25  decisions which may or may not be consistent and each of

1  which necessarily rests on its particular facts.

2  I think what the defendants are doing here or what

3  they're attempting to do is they're taking a phrase that

4  appears in certain decisions and they're converting it in

5  effect to a _caveat emptor_ in this case.  They are saying --

6  we're talking -- this is primarily a prospectus case.  The

7  '33 act, Sections 11, Sections 12 of the '33 act have very

8  few elements.  Primarily, at least at the pleading stage,

9  primarily a material representation and damages.  They are

10  saying, as I understand it, that if a prospectus is couched

11  in cautionary terms -- that clearly was, I don't think

12  there is any doubts about that -- then in effect nothing in

13  that prospectus could be material as a matter of law.

14  Now, my predilection is I'm fairly conservative, at

15  least in an 18th Century sense of the word, and I'm not

16  sure I have a problem with _caveat emptor_, but it's

17  definitely not the law in this instance.  In fact, there

18  is -- there are situations, and they're very common, in

19  fact most capital is raised in private placements where

20  there is no required disclosure whatsoever, the purchases

21  are made by accredited investors.  There you have a true

22  _caveat emptor_ situation, not in a public offering here.

23  We are not -- the plaintiffs are not alleging that

24  this document described these bonds in anything other than

25  terms of speculative securities.  I mean, this is a clear



1    junk bond prospectus.  That's not the issue here.  The
2    issue, however, or the claim, really, is plaintiffs were
3    willing to assume or purchasers of this are willing to
4    assume the business risks.  What they are not willing to
5    assume is the risk that there is a material
6    misrepresentation in the prospectus.  And I just don't -- I
7    think "bespeaks caution" is really a slogan that is used in
8    an attempt to avoid the issue.  The issue is whether there
9    is a material misrepresentation.

10          The defendants make much of the fact that a good
11   deal, although not all, of our case is based on one itty
12   bitty sentence on page 28 of the prospectus.  Well, that
13   one itty bitty sentence appears in the midst of a section
14   entitled Management's Discussion and Analysis of Financial
15   Condition and Results of Operation, which is usually in the
16   business referred to as the M, D and A section.  The M, D
17   and A section happens to be the center piece of the SEC's
18   disclosure requirements.  The purpose of it is to allow the
19   shareholder or prospective investor to view the company
20   through the eyes of management.  And there are two -- I
21   mean, it's clearly material.  Prospective purchasers of the
22   debenture or a bond or any other debt instrument could
23   think of nothing more material than whether he's going to
24   get his principal or interest back.

25          And I might add on top of that if that sentence was

1   not in the M, D and A, this prospectus or the registration

2   statement which encompasses this prospectus would never

3   have been declared effective by the SEC.  It's required to

4   be stated there.  According to plaintiffs there was no

5   reasonable basis for making that statement.  I understand

6   that and our clients understand that they did not guarantee

7   that there would be sufficient cash flow.  We aren't asking

8   for guarantees.  Our contention simply is that there was no

9   basis whatsoever for making that projection that there

10  would be or believe that there would be sufficient cash

11  flow.  I think if the defendants are correct in their

12  interpretation of the "bespeaks caution" cases that you

13  would have -- you could take a prospectus of this size,

14  this is single, you know, not two-sided copy, and you could

15  really reduce it to the size of a laundry receipt and just

16  put on it:  You purchase this stock, you purchase these

17  bonds, you're taking a great risk and you may lose all your

18  money.  There would be no reason to print -- there would be

19  no reason for these extensive disclosures which are

20  specifically required by the SEC.

21      I just want to focus on just -- I don't want to take

22  up too much time because it appears to me at the very least

23  that you have a much better grip on the issues than I do.

24  I want to discuss the <u>Pincus against Oppenheimer</u> case from

25  the Second Circuit just to point out that I just don't

1  think you could separate a doctrine from the cases or

2  phrase from the cases in which they arise.

3       The Pincus case involved a prospectus for a closed

4  end mutual fund.  In one place in the prospectus the

5  following two sentences appear:  The shares of closed-end

6  investment companies frequently trade at discount from or

7  premium to their net asset values.  The shares are also

8  expected to trade at a discount or premium.

9       Well, in that, that was the sole basis for alleged

10  liability in Pincus.  It was probably an unfortunate choice

11  of -- just probably unfortunate phrasing because as

12  everybody is aware, that shares of closed-end mutual funds

13  usually trade at a discount to net asset value.

14       Nevertheless, right after that sentence there was a

15  cross-reference to another section of the same prospectus

16  where the following appears:

17       Shares of closed end investment companies frequently

18  trade at a discount from net asset value but in some cases

19  trade at a premium.

20       That is, of course, an absolutely accurate statement

21  of this.  The defendants claim that Pincus is particularly

22  apposite to this case.  If that's true, I would think that

23  the defendants should then point to some section of this

24  prospectus following their statement that they believed

25  there would be sufficient cash flow to cover debt service

Page 32

1  where they also say that they had no reasonable basis for

2  such belief.  Obviously, if that statement appeared in the

3  prospectus, none of the bonds would have been sold.

4      If the court does not adopt their in effect equation

5  of the doctrine of "bespeaks caution" with caveat emptor,

6  then you really have to deal with the basic issue:  Are the

7  misrepresentations we allege material?  And that is an

8  issue that the Supreme Court in TSC against Northway has

9  said is very, very difficult to resolve on I believe

10  summary judgment in that case and a fortiori motion to

11  dismiss.  I think the complaint is perfectly adequate as it

12  now stands.  I think we could add to it, but I don't

13  particularly see any point because I think you normally,

14  you know, wait until you finish discovery and then cover

15  whatever problems there are in the complaint in the

16  pretrial order.

17      And I don't really have anything else to say that

18  will not take up any more of your time.  I would be happy

19  to answer any questions you might have.

20          THE COURT:  I don't think I have any.  Thank you

21  very much.

22          MR. FEFFER:  Thank you.

23          THE COURT:  Thank you.

24      All right, thank you, counsel.  This has been very

25  helpful.  You will not be meeting with Judge Simandle this

1   afternoon.  I am going to continue the stay in this case
2   until the rendition of the opinion of the court and order
3   deciding this motion to dismiss.
4       So, you and Judge Simandle are relieved of meeting
5   this afternoon.  We hope to get back to you soon.  Thank
6   you very much.
7                (Proceeding then ended)
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 34

8              C E R T I F I C A T E

12              I, THEODORE M. FORMAROLI, Official Court
Reporter for the United States District Court for the
13    District of New Jersey, Certified Shorthand Reporter and
Notary Public of the State of New Jersey, do hereby certify
14    that the foregoing is a true and accurate transcription of
my original stenographic notes to the best of my ability of
15    the matter hereinbefore set forth.

Theodore M. Formaroli
Official U. S. Reporter
N. J. Certificate No. XI433

DATE: July 14, 1992