Jonathan Plasse (JP 7515)
LABATON SUCHAROW & RUDOFF LLP
100 Park Avenue
New York, NY 10017
Tel. (212) 907-0700
Fax (212) 818-0477

Lead Counsel for Plaintiffs and the Class

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
------------------------------x
                              :
                              :  Civil Action No.
In re DONALD J. TRUMP CASINO SECURITIES   :  1:90-MC-0919 (JFG)
LITIGATION—TRUMP CASTLE AND TRUMP PLAZA  :  MDL Docket No. 864
ACTIONS
                              Return Date: January 19, 2007
------------------------------x

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO DISTRIBUTE RESIDUAL BALANCE OF SETTLEMENT FUNDS AND PERMIT SETTLEMENT ADMINISTRATOR TO DISPOSE OF ALL CLAIM FORMS AND SUPPORTING DOCUMENTS

**I.   Introduction**

Plaintiffs respectfully submit this memorandum in support of their motion for an Order authorizing them to donate the residual balance of funds remaining in the *Trump Securities Litigation* settlement fund to two charitable organizations: the Lawyers' Committee for Civil Rights Under Law and the Institute for Law and Economic Policy (ILEP). Alternatively, Plaintiffs request that the balance of the funds be donated as the Court deems appropriate. There is a balance of $10,558.90 remaining in the Net Settlement Fund that has not been claimed. For the reasons set forth below, Plaintiffs' motion should be granted.

## II.   Background

This securities class action was settled pursuant to the terms of a Stipulation of Settlement dated as of March 10, 1992.  The cash portion of the Settlement amounted to $1,350,000, before attorney's fees and expenses.  The Settlement was approved by this Court pursuant to an Order and Final Judgment dated August 17, 1992.

By Order dated August 8, 1994, the Net Settlement Fund (after payment of attorney's fees and expenses) was distributed to class members.  Garden City Group, Inc. ("GCG"), the claims administrator retained by Lead Counsel to distribute the settlement funds, distributed checks to 242 claimants in the aggregate amount of $864,218.62.

GCG monitored the status of these checks, and performed a National Change of Address (NCOA) search for those claimants whose checks were returned as undeliverable by the U.S. Post Office.  Six of the checks that GCG mailed to class members, totaling $7,193.39, were returned to GCG as undeliverable.  An additional check for $368.44 was never cashed.

The Net Settlement Fund has a current balance of $10,558.90, which is comprised of the $7,561.83 in unclaimed funds and $3,000 of unused reserves to cover potential tax liabilities.  This cash balance, if distributed to the 242 class members whose claims were approved, would result in each claimant receiving an average of approximately $43.  This amount would not justify the time and expense necessary to undertake such a distribution.

## III.   Donation of the Balance of the Net Settlement Fund

The Net Settlement Fund currently contains cash that was unclaimed because it was undeliverable or the checks were not cashed.  Courts have noted that "[m]ost class actions result in some unclaimed funds."  Six (6) Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301, 1307 (9th Cir. 1990); see In re Motorsports Merchandise Antitrust Litig., MDL No. 1211, 2001 U.S. Dist.

LEXIS 12040, at *4-5 (N.D. Ga. Aug. 16, 2001) ("It is not uncommon in . . . class actions to have funds remaining after payment of all identifiable claims."). Indeed, "[d]espite best efforts[,] . . . it remains virtually certain—especially when large classes are involved—that not all class members will share in an aggregate class recovery. This situation may or may nor result in a residue remaining after individual claim distribution." Jones v. National Distillers, 56 F. Supp. 2d 355, 356 (S.D.N.Y. 1999) (quoting Newberg on Class Actions § 10.14, at 10-36 (3d ed. 1992)). In such circumstances, "[f]ederal courts have broad discretionary powers in shaping equitable decrees for distributing unclaimed class action funds." Six (6) Mexican Workers, 904 F.2d at 1307 (finding that district court properly considered *cy pres* distribution for the limited purpose of distributing the unclaimed funds); Motorsports Merchandise, 2001 U.S. Dist. LEXIS 12040, at *5 ("Where no legal claim to settlement benefits exists, a court can exercise its equitable powers to distribute the remaining funds) (citing Powell v. Georgia-Pacific Corp., 843 F. Supp. 491, 499 (W.D. Ark. 1994)).

"Where distribution of class funds to class members is infeasible, courts often use *cy pres* principles to determine an appropriate use for the funds." Jones, 56 F. Supp. 2d at 357. In the class action context, the *cy pres* approach seeks to apply unclaimed class action settlement or damage monies to the next best class or the next best compensation use. Id. The object of applying the funds to the "next best" class is to ensure that the funds that are distributed outside the class will "primarily" benefit class members. Id.

Although redistribution is often made "as nearly as possible" to the intended use, some courts have "concluded the doctrine is no longer regarded as being limited and restricted to the closest comparable alternative to the original purpose . . . ." Powell, 843 F. Supp. at 497 (citing Superior Beverage Co. v. Owens-Illinois, 827 F. Supp. 477, 479 (N.D. Ill. 1993)). In Jones, the court recognized that "[a] frequent use of class funds not accruing to the class members is a donation to a

public or otherwise non-profit entity combating harms similar to those that injured the class members." Jones, 56 F. Supp. 2d at 358.

In this securities class action, the harm to class members was the loss of value on their investment in bonds issued by Trump's Castle Funding, Inc. ("Castle Funding") and Trump's Plaza Funding, Inc. ("Plaza Funding") caused by the Defendants' misrepresentations in audited financial statements regarding the financial condition of the respective entities. Plaintiffs' Lead Counsel respectfully submits that the best use of the remaining cash in the Net Settlement Fund would be to make a donation to certain charitable funds whose purpose is to enhance access to the civil justice system.

The Lawyers' Committee for Civil Rights Under Law is a nonpartisan nonprofit organization formed in 1963 to combat discrimination and secure equal justice for minorities under the law. Donations will be used by the Committee to work for equal opportunities for minorities, especially in the areas of employment and housing discrimination, voting rights, and education.

ILEP is a national not-for-profit organization based in Philadelphia, PA. ILEP sponsors symposia focusing on the administration of civil justice. ILEP's mission is to formulate policy positions on civil justice topics including consumer protection, environmental issues, government regulation, and preservation of free and fair markets. (See Web pages annexed to Plasse Declaration as Exhibits C and D.)

**IV.    Conclusion**

For the foregoing reasons, Lead Counsel for Plaintiffs respectfully requests that the Court enter an Order authorizing the donation of one-half of the remaining balance of the Net Settlement Fund to the Lawyers' Committee for Civil Rights Under Law and the other half to ILEP.

A proposed Order is submitted herewith.

Dated: New York, New York  
December 1͏4, 2006

Respectfully submitted,

LABATON SUCHAROW  
& RUDOFF LLP

By: _____

Jonathan M. Plasse  
LABATON SUCHAROW  
 & RUDOFF LLP  
100 Park Avenue  
New York, New York 10017-5563  
Tel. (212) 907-0700  
Fax (212) 818-0477

*Lead Counsel for Plaintiffs and the Class*

5