**Exhibit A**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

----------------------------------x

IN RE:                          :

DONALD J. TRUMP CASINO          :
SECURITIES LITIGATION --
TRUMP CASTLE AND                :
TRUMP PLAZA ACTIONS

                                :

----------------------------------x

CIVIL ACTION
MDL DOCKET NO. 864
CLASS ACTION

## STIPULATION AND AGREEMENT
## OF COMPROMISE AND SETTLEMENT

The parties to the above-captioned consolidated civil
actions (the "Actions") have entered into the following
Stipulation and Agreement of Compromise and Settlement (the
"Stipulation"), subject to the approval of the Court:

WHEREAS:

A.   On July 19, 1985, Trump's Castle Funding, Inc.
("Castle Funding") registered certain bonds with the SEC by
filing a Form S-1 Registration Statement and Prospectus (the
"Castle Prospectus").  The Castle Prospectus was declared
effective on September 20, 1985, and bonds were issued as
follows:  (a) 13.75% First Mortgage Bonds, Series A-1, due
1997, in an aggregate principal amount of $226,800,000 were
issued on July 27, 1985 at the stated principal amount, and (b)
7.0% First Mortgage Bonds, Series A-2, due 1999, in an
aggregate principal amount of $125 million were issued on

July 27, 1985, at a 41.44 percent discount from the stated
principal amount (the "Castle Bonds"). The Castle Bonds were
sold on the American Stock Exchange following their issuance on
July 27, 1985.

      B.   On June 8, 1987, Castle Funding filed a Form S-1
Registration Statement and Prospectus (the "Second Castle
Prospectus") with the SEC pursuant to which certain of the
accredited investors sold $1 million in aggregate principal
amount of the Series A-1 Castle Bonds and $50 million in
aggregate principal amount of the Series A-2 Castle Bonds to
the public.

      C.   Through the issuance of the Castle Bonds, Castle
Funding raised gross proceeds in an amount in excess of $300
million, which were immediately loaned by Castle Funding to
Trump's Castle Associates Limited Partnership ("Castle
Associates"). To evidence the loan, Castle Associates issued
to Castle Funding promissory notes in the aggregate principal
amount of $351,800,000. The notes are secured by a mortgage
upon Castle Associates and substantially all of its assets and
its ancillary properties. The notes and mortgages were
assigned by Castle Funding to First Fidelity Bank, National
Association, New Jersey ("First Fidelity"), as trustee under an
indenture (the "Castle Indenture").

      D.   On April 4, 1986, Trump's Plaza Funding, Inc.

("Plaza Funding") registered certain bonds with the SEC by
filing a Form S-1 Registration Statement and Prospectus (the
"Plaza Prospectus").  The Plaza Prospectus was declared
effective on May 9, 1986, and Bonds in an aggregate principal
amount of $250 million were issued on May 9, 1986 (the "Plaza
Bonds").  The Plaza Bonds were sold on the American Stock
Exchange following the issuance of the bonds on May 9, 1986.

      E.    Through the issuance of the Plaza Bonds, Plaza
Funding raised gross proceeds of $250 million, which were
immediately loaned by Plaza Funding to Trump Plaza Associates
("Plaza Associates").  To evidence the loan, Plaza Associates
issued to Plaza Funding a $250,000,000 promissory note.  The
note is secured by a mortgage upon Plaza Associates and
substantially all of its assets.  The note and mortgage were
assigned by Plaza Funding to First Fidelity under an indenture
(the "Plaza Indenture") as security for the Plaza Bonds.

      F.    On or about July 2, 1990 a complaint entitled
Stuyvesant et al. v. Trump et al. was filed in the United
States District Court for the Southern District of New York.
That complaint, filed as a purported class action, alleged,
among other things, that the defendants named therein
disseminated certain false and misleading information in
connection with the Castle Bonds and Plaza Bonds in violation
of certain securities laws.

G.   Shortly thereafter, another complaint was filed containing similar allegations.  These cases are collectively referred to as the "Actions".

H.   On December 20, 1990, the Multidistrict Panel entered an Order consolidating the Actions for pretrial purposes in the United States District Court for the District of New Jersey.

I.   On or about March 1, 1991, a consolidated amended complaint was filed in the Actions (the "Complaint").  The Complaint, which superceded all other complaints previously filed in the Actions, alleged, among other things, that the Castle's and Plaza's 10Ks and 10Qs issued during the purported class period, contained materially misleading misrepresentations and omissions with regard to:

> (1)  the financial condition and cash flow problems of Donald Trump, Castle Funding and Plaza Funding; and
>
> (2)  Castle Associates and/or Plaza Associates providing confidential and proprietary business information, including lists of high-level gamblers and affluent clientele, to Trump Taj Mahal Associates without compensation and in violation of the Castle and/or Plaza Indentures.

J.   This Complaint was brought on behalf of classes consisting of:

(i)  all persons who purchased Castle Bonds or
Plaza Bonds issued pursuant to the Castle Prospectus
and Plaza Prospectus, respectively, between March 31,
1989, and June 4, 1990; and

(ii)  all persons who acquired the Castle Bonds
or Plaza Bonds issued pursuant to the Castle
Prospectus, and who sold the bonds at a loss or
presently hold the bonds at a loss; and

(iii)  all persons who purchased Castle Bonds
and Plaza Bonds issued pursuant to the Castle
Prospectus and Plaza Prospectus, respectively, between
January 1, 1990 and June 4, 1990.

The Complaint was brought against Donald J. Trump, Robert S.
Trump, Harvey I. Freeman, Castle Associates, Castle Funding,
Plaza Associates and Plaza Funding.  It asserts claims for
violations of the federal securities laws, a breach of
contract, common law fraud, breach of fiduciary duty, and
common law false advertising.

K.  As a result of the institution and prosecution of
the Actions, settlement discussions commenced.  After intensive
negotiations among the counsel for the Parties, an agreement
was reached, which was embodied in a Memorandum of
Understanding, executed on or about July 30, 1991 (the
"Memorandum of Understanding").  The Memorandum of
Understanding provided for settlement of the Actions, upon the
terms set forth therein.

L.    The Memorandum of Understanding further provided that the parties would execute an appropriate stipulation of settlement and such other documentation as would be required to obtain approval from the Court for the agreement embodied in the Memorandum of Understanding.  The parties agreed to present the settlement to the Court for hearing and approval as soon as practicable following appropriate notice to members of the Settlement Class, and agreed to use their best efforts to obtain approval of this settlement and dismissal of the actions with prejudice as to all claims asserted in the Actions.  The Memorandum of Understanding further provided that counsel for the plaintiffs would be entitled to take such discovery as the parties mutually agreed was necessary in order for plaintiffs to satisfy themselves that the settlement was in fact in the best interests of the Settlement Class.  That confirmatory discovery has now been completed.

M.    In the summer of 1991, Donald Trump proposed an exchange offer under which the Castle Bonds would be exchanged for new bonds (the "New Bonds").  This exchange offer was part of a proposed plan of reorganization (the "Plan of Reorganization").

N.    In reliance upon, among other things, the Memorandum of Understanding and the agreement among the parties it embodied, Castle Funding and Castle Associates have begun to solicit approvals for their Plan of Reorganization, which

-6-

solicitation will contain amendments to it negotiated as part of the settlement of the Actions, as reflected in the Memorandum of Understanding.

O.   Plaintiffs' counsel have conducted an extensive examination into the facts and law relating to the matters set forth in the Complaint, including matters related to events which occurred through the commencement of the solicitation of support for the Plan of Reorganization. Plaintiffs' counsel have examined voluminous documents, including various financial analyses and projections, filings with the Casino Control Commission, and various internal corporate documents. Plaintiffs' counsel have consulted with their own experts. Plaintiffs' counsel have concluded that the terms of this settlement and of the Plan of Reorganization, as set forth in paragraphs 1 - 12 below, are fair to and in the best interests of the members of the Settlement Class, as defined below.

P.   Plaintiffs agree to settle the Actions pursuant to the terms and provisions of this Stipulation after considering:

(1)  the substantial benefits to plaintiffs and members of the Settlement Class that are embodied in the settlement;

(2)  the risks of litigation;

(3)  the market conditions;

(4)   the initial approval of the Plan of
Reorganization by the Casino Control Commission
and the Securities and Exchange Commission;
(5)   the substantial discovery conducted by the
plaintiffs' counsel in this action;
(6)   the possibility that the claims alleged
would not survive the imminent bankruptcy of
Castle Funding; and
(7)   the conclusion of plaintiffs' counsel that
the settlement is fair, reasonable and adequate
and in the best interests of the members of the
Settlement Class.

Q.   Defendants vigorously deny all liability with
respect to any and all of the facts or claims alleged in the
Complaint, but consider it desirable that the Actions be
settled and dismissed because such settlement and dismissal
would:

(1)   be beneficial to all defendants and to
creditors of Castle Funding and Castle Associates;
(2)   facilitate consummation of the Plan of
Reorganization;
(3)   avoid the substantial burden, expense,
inconvenience and distraction of continuing
litigations; and
(4)   put the Settled Claims to rest.

NOW, THEREFORE, IT IS STIPULATED AND AGREED, by and
between the parties hereto, subject to the approval of the
Court and pursuant to Rule 23 of the Federal Rules of Civil
Procedure, that (a) Counsel for the plaintiffs will file an
amended complaint in substantially the form annexed hereto as
Exhibit I (the "Amended Complaint"), consistent with the
interests of justice, that will have the effect of dismissing
without prejudice the claims in the Actions brought on behalf
of the holders and sellers of Plaza Bonds and (b) all claims,
rights or causes of action that have been, could have been or
in the future might be asserted by plaintiffs herein, or by any
member of the Settlement Class, known or unknown, whether
directly, representatively, derivatively, or in any other
capacity against any of the defendants in any of the Actions,
their respective present and former officers, directors,
employees, agents, attorneys, representatives, trustees,
financial advisors, investment bankers, affiliates (as defined
in Rule 12B promulgated pursuant to the Securities and Exchange
Act of 1934) associates (as defined in Rule 12B promulgated
pursuant to the Securities and Exchange Act of 1934), parents,
subsidiaries, general or limited partners, partnerships, heirs,
executors, administrators, successors and assigns, in
connection with any of the facts or claims which are or could
have been alleged in the Actions, including those set forth in
paragraphs A through K in the Stipulation, shall be

compromised, settled, released and dismissed with prejudice (the "Settled Claims"; however, the term "Settled Claims" does not relate to claims arising out of the sale of the Plaza Bonds) upon and subject to the following terms and conditions:

1.    Solely for the purpose of this settlement, the Parties consent to the certification of a class (the "Settlement Class") consisting of all purchasers of (i) 13.75% Frist Mortgage Bonds, Series A-1, due 1997, or (ii) 7.0% First Mortgage Bonds, Series A-2, due 1999, issued by Castle Funding on or after July 27, 1985, who purchased those Castle Bonds on or after March 31, 1989 and before June 1, 1991 and either currently hold them or sold them at a loss on or before March 5, 1992, as well as the legal representatives, heirs, predecessors and successors in interest, or assigns of all such foregoing purchasers, and, for that purpose alone, stipulate that the Actions fulfill all the requirements of Rule 23 of the Federal Rules of Civil Procedure.

2.    In full and complete settlement of all claims:

(a)   Trump's Castle Hotel & Casino, Inc. ("TCHC") or, at the option of Donald J. Trump, a transferee of TCHC's interest in Trump Castle Associates (the "Partnership") will issue to the settlement class certain putable warrants, the terms of which are described more fully in Exhibit II hereto (the "Warrants"), which will be convertible into common stock of the issuer or the equivalent thereof reflecting .50% of the equity of the Partnership on a fully diluted basis, subject to

-10-

the terms and conditions more fully described in Exhibit II
hereto.   These warrants will be held in a bank selected by lead
counsel for the Settlement Class, and will not be distributed
until ten days after final approval of the Settlement.

        (b)  The terms of the proposed Plan of
Reorganization of the Partnership and certain related entities
(the "Solicitors"), pursuant to Chapter 11 of Title 11 of the
United States Code, 11 USC Sections 101 et. seq. (the
"Reorganization") as currently reflected in the Form S-4
Registration Statement (the "Registration Statement") which was
filed by the Solicitors on (or about) July 31, 1991, have been
amended and improved as a result of the commencement of the
Actions and the negotiation of this settlement in the following
ways:

        (i)   The portion of the 9.5% per annum interest
which must be paid currently in cash rather
than in kind is increased from 0 to 5% for
the first semi-annual interest payment date
on the "New Bonds" (estimated to be
8/15/92), from 5% to 6% for the second
semi-annual interest payment (2/15/93); from
5.75% to 7% for the third period (7/15/93);
from 6.375% to 8% for the fourth period
(2/15/94), and from 7.1% to 9.50% for the
period ending 8/15/94 thereafter;

    (ii) If the Partnership fails to have in any year
EBITDA exceeding the level, adjusted for
"fair share" principles, specified for that
year in the Partnership Agreement, which
level is being raised above that previously
contemplated to the following: 1992 — $30
million; 1993 — $40.5 million; 1994 — $45
million; 1995 — $50 million; 1996 and
thereafter $50 million, the bondholders
shall have the exclusive right to sell the
Castle Casino;

  (iii) Donald J. Trump will no longer be entitled
to payment _pari passu_ with the mandatory
cash interest on the New Bonds on the $15
million note from the Partnership; instead
payments of interest on that note (which
will be recategorized as a priority
partnership interest) will be subordinated
to full cash payment (at the rate of 9.50%
per annum) of interest due on the New Bonds;
and

  (iv) 75% of the so-called "Third Tier Amount"
will be applied to the purchase of New Bonds
in the open market, and such payment will be
made prior to any distribution in respect of
arrearages on the Trump priority interest,
unless the bondholder partner elects to pay

such arrearages currently, so long as the
Partnership's net assets exceed the amount
of the Trump Priority Interest.

All capitalized terms in this paragraph have the
meaning given them in the Registration Statement.

(c)  Defendants have created a settlement fund in the
amount of $1,350,000 in cash (the "Cash Settlement Fund").
This amount will be paid to an interest-bearing escrow account
to be maintained by plaintiff's lead counsel at a financial
institution mutually agreeable to the parties to the Actions no
later than five days after the execution of this Stipulation
and will not be distributed until ten days after the final
approval of the Settlement.  Plaintiffs will pay the costs of
notice and administration from this fund.

3.  Upon final approval of the settlement, the
consideration set forth in paragraphs 2(a) and 2(c) above will
be distributed to members of the Settlement Class as follows:

(a)  All members of the Settlement Class who sold
their bonds (the "Sellers") will receive
their pro rata share of the cash settlement
fund, based on their proof of claim, after
attorneys fees and costs of notice and
administration have been paid; and

(b)  All members of the Settlement Class who hold
their bonds (the "Holders") will receive
their pro rata share of the warrants, based
upon their proof of claim.

-13-

4.   Counsel for Plaintiffs considers the Plan of
Reorganization fair and reasonable and in the best interests of
the members of the Settlement Class.

5.   Promptly after execution of this Stipulation, the
parties shall jointly apply to the Court for an Order in the
form annnexed hereto to as Exhibit A (the "Preliminary Order"):

(a)   certifying this action, for settlement
purposes only, as a class action by the name
plaintiffs on behalf of the Settlement Class
consisting of all purchasers of (i) 13.75%
First Mortgage Bonds, Series A-1, due 1997,
or (ii) 7.0% First Mortgage Bonds, Series
A-2, due 1999, issued on or about July 27 by
Castle Funding, who purchased those Castle
Bonds on or after March 31, 1989 and before
June 1, 1991 and either currently hold them
or sold them at a loss on or before March 5,
1992, as well as the legal representatives,
heirs, predecessors and successors of
interests, or assigns of all such foregoing
purchasers; except excluding defendents and
any persons, firms, trusts, corporations or
other entities related to or affiliated with
any of the defendants or the member of their
immediate families, and further excluding
all those persons who shall have filed

-14-

proper requests for exclusion pursuant to
Fed. R. Civ. P. 23 and the Preliminary Order;

(b)  scheduling a hearing (the "Settlement
     Hearing") to be on a date no later than
     forty-five days after notice to the
     Settlement Class, as set forth below, to
     determine whether the settlement should be
     approved by the Court, and to consider the
     application by plaintiffs' counsel for
     payment of attorneys' fees and expenses (the
     "Fee Petition");

(c)  approving the form of notice for the
     Settlement Hearing agreed upon by counsel
     for the parties and annexed to the
     Preliminary Order as Exhibits 1 and 3, and
     directing counsel for defendants to mail and
     publish such notice of the settlement
     hearing to all members of the Settlement
     Class;

(d)  determining that the method of notice
     specified is the best notice practicable,
     and shall constitute due and sufficient
     notice of the Settlement Hearing (Counsel
     for defendants shall at or before this
     hearing file proof of mailing of the notice);

(e)   'requiring any person who receives notice of
      this settlement who wishes to object to this
      settlement to serve and file notice of his
      or her intention to appear and object, the
      basis for such objection and copies of
      papers to be presented to the Court in
      opposition to the settlement, in the manner
      and within the time specified in the notice;

(f)   requiring any person who seeks exclusion
      from the Settlement to serve and file,
      within the time and in the manner specified
      in the notice, notice of his or her
      intention to seek exclusion from the
      Settlement Class;

(g)   pending the final determination of whether
      the settlement should be approved, enjoining
      plaintiffs and all members of the Settlement
      Class from commencing or prosecuting any
      action in any jurisdiction, asserting any
      claim, directly, representatively,
      derivatively or in any other capacity which
      has been or could have been asserted, or
      arises from or relates to any of the matters
      or transactions referred to, in the
      Complaint or the Amended Complaint.

6.    If, after the notice and Settlement Hearing provided for herein, the settlement is approved by the Court, the parties shall promptly request that the Court enter a final order and judgment approving the settlement and dismissing the Actions with prejudice in the form annexed hereto as Exhibit B:

(a)  approving the settlement and judging its terms to be fair and reasonable and adequate to the Settlement Class, directing consummation of the settlement pursuant to the terms and provisions of this Stipulation, and retaining jurisdiction to effectuate the same;

(b)  dismissing the Amended Complaint on the merits, with prejudice and without costs;

(c)  discharging and releasing the defendants and each of their respective predecessors, successors, past and present officers, directors, trustees, partners, principals, employees, agents, attorneys, solicitors, investment bankers, accountants, independent auditors, heirs, parents, subsidiaries, affiliates and assigns and each of them as to all the Settled Claims;

    (d)   permanently barring and enjoining plaintiffs

        and all members of the Settlement Class,

        from institution, maintenance, prosecution

        or enforcement, either directly or

        indirectly, of any cause of action, claim or

        liability which is released and discharged

        by reason of the portion of the judgment

        described in paragraph c above;

    (e)   reserving jurisdiction over all matters

        related to the consummation of the terms of

        this Stipulation.

    7.   Defendants shall have the right to terminate the settlement if Settlement Class members representing beneficial ownership of either (a) ten percent (10%) of the Sellers, or (b) fifteen percent (15%) of the Holders, make timely requests to be excluded from the Settlement Class.

    8.   Defendants and plaintiffs shall each have the right to terminate the settlement:

    (a)   If the Plan of Reorganization is not

        approved, confirmed and consummated by July

        30, 1992; or

    (b)   If the Court has not entered orders with

        respect to the Actions in substantially the

        forms annexed hereto as Exhibits A and B by

        August 31, 1992 and which have not been

modified or overturned on appeal.  If the
Court enters an Order approving the
settlement prior to consummation of the Plan
of Reorganization, such approval will be
conditional until such time as the Plan of
Reorganization is consummated.

9.   Counsel for plaintiffs and the Settlement Class
shall apply to the Court for award of its fees and
reimbursement of expenses, including costs of sending notice to
the Settlement Class, not to exceed $450,000 in fees from the
Cash Settlement Fund.

10.   This agreement constitutes the entire agreement
among the parties and cannot be changed or modified except in
writing signed by all parties.

11.   This agreement shall be governed and construed in
accordance with the internal laws of the State of New York
without giving regard to the choice of law provisions of New
York.

12.   This Stipulation may be executed in several
counterparts, which taken together shall constitute one
document and which shall become binding upon all Parties when
it in in total contains the signatures of all the attorneys for
the parties to this Stipulation.

WILLKIE FARR & GALLAGHER

By _____
        Richard L. Posen
        (RP-3593)

One Citicorp Center
153 East 53rd Street
New York, New York  10022-4669
(212) 935-8000
Attorneys for The Trump
Defendants


CLAPP & EISENBERG

By _____
        John J. Barry
        (JB-0246)

One Newark Center
Newark, New Jersey  07102
(201) 642-3900
Attorneys for The Trump
Defendants

GOODKIND LABATON RUDOFF &
    SUCHAROW


By _____
        Edward Labaton
        (EL-2947)

122 East 42nd Street
New York, New York  10168
(212) 490-2332
Lead Attorneys for the
Plaintiff Class

-20-